No. 3.—THOMAS N. HAMILTON, plaintiff in error, *vs.* WM. M. REESE, administrator, defendant in error.

[1.] In settling with trustees for balances in their hands, simple interest is the rule—compound interest or rests, the exception.

[2.] To justify compounding or rests, a special case is required, such as that the trustee applied the fund to his own benefit in trade, sold the trust stocks and applied the proceeds to his own use, or refused to follow the directions of the deed creating the trust, as to investments, or has conducted himself fraudulently in the management of the fund.

[3.] Mere negligence will not justify rests; there must be corruption or gross delinquency. *Fall vs. Simmon,* (6 *Ga. R.* 265,) reviewed and approved.

Debt, in Wilkes Superior Court. Tried before Judge IRVIN, September Term, 1854.

In 1818, Thomas N. Hamilton and Thomas P. Randolph were appointed the committee of Augustus Napier, a lunatic, by the Superior Court of Columbia County; and by their commission, were required to make returns from time to time to said Court. In 1830, Thomas P. Randolph removed to the State of Florida, and subsequently died, having first placed funds in the hands of Robert R. Randolph to discharge his liability as committee. In 1849, Robert R. Randolph, by sealed bond, obligated himself to pay to Thomas N. Hamilton, surviving

committee, "whatever sum shall appear to be due and paya-
ble by the estate of Thomas P. Randolph, to the estate of the
said lunatic, the amount to be determined by an examination
of the records where his returns were made." On the trial
of the suit on this obligation, it appeared that Thomas P.
made two returns—one in 1829, showing receipts $1080, and
small disbursements. Another in 1830, of small disburse-
ments, and no more. The Court charged the Jury, that in
arriving at the amount due by the estate of Thomas P. Ran-
dolph, they should allow only running or simple interest,
without compounding at the end of every six years, as con-
tended for by plaintiff.

This charge is assigned as error.

T. R. R. COBB, for plaintiff in error.

WM. REESE, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The only question in this case is, should simple or
compound interest be computed, on the balance in the hands
of Thomas R. Randolph?

The argument seems to assume, that an arbitrary rule was
prescribed by this Court in *Fall vs. Simmons, in* 6 *Ga. R.*
265, to the effect, that on all balances in the hands of trus-
tees, interest should be compounded every six years. This
is a mistake; on the contrary, referring to the fact that the
Legislature had, two years before that case was decided, pre-
scribed a general rule upon this subject, applicable to all
trustees, as well those already qualified, as such as might
thereafter be appointed, we felt ourselves relieved, of course,
from the necessity of laying down any rule, and simply af-
firmed the decree of the Circuit Court, making rests at the
end of every six years. The Judge who wrote out that opin-
ion did state the general doctrines deducible from the author-

ities upon this question. He said that simple interest was the rule and rests the exception. In other words, in order to charge compound interest, there must be a special case. He went further and specified, by way of illustration, what would constitute such a case. "For example," says the learned Judge. "if the trustee applies the fund to his own benefit in trade, or sells trust stocks and applies the proceeds to his own use, or refuses to follow the directions of the deed enacting the trust as to investments, or conducts himself fraudulently in the management of the funds, *and in all other instances depending upon like principles*, Chancery will direct the compounding of the interest."

[2.] And it seems that Sir *Thomas Plumer*, the Vice Chancellor in *Tebbs and others against Carpenter and others*, (1 *Maddock's Ch. R.* 162,) after a most elaborate review of all the authorities, arrives at the same conclusion, namely: that a special case is necessary to induce the Court to charge trustees with more than 4 per cent. upon the balances in their hands, that being the usual and ordinary rate of interest on such balances.

Whether this case be tested, then, by *Fall and Simmons* or *Tebbs and Carpenter*, the inquiry is, does it come within the general rule or the exception?

What is the case made upon the record? That the committee-man having, in 1830, removed from this State to Florida, and has made no returns since—the debts and credits standing upon the records of his return just as he left them, at that time. If this be not an ordinary case, and consequently, falling within the rule, it is difficult to imagine one that would. What is there special in it, to make it an exception? Nothing is suggested in the pleadings or proof. In the language of this Court already cited, it does not appear, nor does even the presumption arise, that this trustee had applied the fund for his own benefit in trade; it is not pretended that he sold stocks belonging to his *cestui que trust* and applied the proceeds to his own use; he has violated no directions which it was obligatory upon him to ob-

Hamilton *vs.* Reese, adm'r.

serve; nor is charged that he has conducted himself fraudu-
lently in.the management of the trust.

[3.] *Negligence* in not collecting the money and re-invest-
ing it, is the worst and all that can be imputed to the trustee;
and we apprehend no precedent goes to the length of holding
that this, of itself, constitutes such "gross delinquency" as
will authorize compound interest to be charged by way of
penalty.

Concurring fully, as we do, in the proposition, that every
case of this sort must stand upon its own peculiar circum-
stances, any reference to precedents might seem unnecessary.
I beg leave, however, to advert, for a moment, to the facts in
*Fall and Simmons*, partly for the purpose of vindicating that
judgment; but mainly to show how easy it is to confound ca-
ses whose facts are wholly dissimilar. If the adjudications
of this Court were more *carefully studied* we should escape
much unmerited censure. Examine the facts—the excep-
tions or assignments of error and the judgment—so far, the
case is authority. All else, I will not say, is "leather and
prunella," but I will say, is mere *obiter dicta*, and should be
quoted only as such.

The intestate, Trimble, died in December, 1827. In Feb-
ruary, 1828, the inventory was made and returned. In the
same month, the administrator, Dr. Fall, returned the sale
bill, including a tract of land, and a schedule of notes, rents,
&c. In 1829, he made a return of *disbursements*. In De-
cember, 1834, he made another return of *disbursements*. And
in 1845, after the filing of the bill against him by the distrib-
utees, he made another return, embracing both debits and
credits. These are all the facts which appear in the report
of the case. In the Circuit Court, as well as in this Court,
an exemplification was exhibited, taken from the records of
the Ordinary, upon which was spread out all the items of the
several returns, both as it regards dates and amounts; and
the result was, and the statement, in the opinion of the Court,
shows as much, that while the assets of the estate came into
the hands of the administrator as early as 1827, he never made

mention of them thereafter, while, for the eighteen years that followed, he was making disbursements, more or less, *annually*, in behalf of the estate.

Would simple running interest have been just under such circumstances? Unquestionably not. By the Statute Law of this State, expenditures must first be made out of the accruing income; and no part of the principal can be touched, unless by order of the Court or under special circumstances. At any rate, the yearly profits or interest must be first exhausted. Gross injury would have resulted to the heirs of Trimble, without compounding. Charge running interest only on the money which come into the hands of Dr. Fall in 1828, and then allow him interest on his annual disbursements, from that year down to 1845, when he made his last return, or to 1849, when the final decree was rendered, and you will consume the original capital entirely, without the trustees ever having paid one dollar of it.

Take, for example, the mercantile mode of computing interest upon notes. Debit yourself with a note of $500; pay the interest *only*—that is, $35 yearly; and in the final settlement, charge running interest on the note, (representing the cash fund, and which come into the hands of the trustee,) and set off against this the annual payments of the interest, with interest thereon from the time they were made, (representing the yearly disbursements,) and by this method, in the course of time, as it is easy to demonstrate, the original debt of $500 will have been discharged, without one dollar of the principal ever having been paid.

And in this way great injustice has likely been often done, unintentionally, in settling estates.

Our Statute regulating interest is wrong, and that of Connecticut is the only one in the Union that is right upon the subject of interest. Interest is the compensation fixed, by law, for the use of money for twelve months. By our Act, every payment amounts to a renewal of the note, although made a dozen times or oftener during the year; because it is provided, that the payment shall first be applied to the ex-

tinguishment of the interest which has accrued up to that time. And then, on the other hand, should the debt be suffered to run for more than a year after due, compound interest is not allowed. Both of these provisions are wrong. By the Connecticut Statute annual rests are made on all debts; and interest on the principal is counted for the year, irrespective of any intermediate payments; and interest is calculated in favor of the debtor on these payments, and a balance struck at the end of each year.

This is as it should be.

Judgment affirmed.