## CHAMBERS & COMPANY v. HARPER.

1. Where a horse was sold for cash with an express warranty, but was worthless, and was returned to the sellers and another taken from them only on condition that it should suit the buyer, but it also was returned, and both were kept by the sellers, the buyer was entitled, upon their refusal to return the money he had paid them, to recover the same in a proper action.

2. The evidence showing that the sellers acted in bad faith in refusing to return the money, the jury were justified in allowing the buyer his counsel fees.

April 15, 1889.

Sales. Warranty. Vendor and purchaser. New trial. Attorneys' fees. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1888.

Harper sued Chambers & Company in a justice's court. His account attached to the summons was for $65, money paid Chambers & Co. March 17, 1886, for

one horse, which they warranted to be sound and suitable for the use intended, that of a dray-horse, and all other purposes. It proved to be unsound, unable to do any reasonable service, and could not be used. This Harper discovered after paying for it, and returned it to Chambers & Co., who have it, and refuse to repay the money, and have caused Harper unnecessary trouble and expense, are stubborn and litigious, and have acted in bad faith in the trade and in refusing to repay the money, to the damage of plaintiff $30 for attorneys' fees in this suit. His suit was for the total amount, $95. He obtained a judgment for $65 and costs, and the defendants appealed to the superior court. On the trial there, the testimony of the plaintiff, his servant, and a man that who went with him to the defendants' stables to purchase the horse, was as follows:

They met Chambers at the stables. Plaintiff told him he wanted to buy from one resident, who would be responsible and on whom he could rely, as he was no judge of a horse; and that he would not buy from a drover. Chambers showed three horses, and on plaintiff's asking if they were sound and all right, replied that they were, and that he warranted them to be sound in every respect. He subsequently visited the stable in company with a witness. The same horses were brought out. The one in question seemed to be a little lame; Chambers said it was caused by standing having nothing to do, and as it was then of no use to them, he would sell it at a sacrifice. Plaintiff proposed to take the horse and try it before paying; Chambers said he would not fool with so small a trade as that, but that plaintiff might take the animal along and pay $65 for it, and further remarked: "I warrant him to be perfectly sound in every respect; and if he is not as sound as any horse in town in body and limb, bring him back any time within two weeks, if he proves unsound, and get your money back." On these conditions, plaintiff

took the horse and paid the money. That evening he tried to drive it about two miles. It could not go faster than a walk; seemed "stove up," lame and broken down. One of its joints was sore to the touch. Plaintiff cared for it that night, and next morning carried it to a veterinary surgeon. It was worthless. Plaintiff carried it back to defendants that morning and asked for his money. Chambers told him to take another horse and try it; that it was worth $10 more than the first one, and if he liked it he might take it at the same price. He took it, led it a short distance, hitched it to a hack, and before he had driven a hundred yards it stumbled and fell and broke the shaft. It could not go out of a walk. He drove it about three-quarters of a mile; it fell twice and stumbled several times; and further efforts were made to drive it, but it was even worse than the first horse. It was returned to defendants and the money demanded, and payment was refused. The last horse was not bought or taken in exchange for the first, but only taken out to try and see if plaintiff liked it. On the first trial of this case, Chambers swore that the latter horse died in a week or so after its return, and that he did not know where the first one was, as he had sold it. Only plaintiff, one of his witnesses and Chambers were present at the time the trade was made. Others were at the door of the stable some distance off, but plaintiff did not think they heard any of the conversation. Both horses were well cared for while in plaintiff's possession. The veterinary surgeon testified that he examined both horses and found them lame, but discovered no other unsoundness; and they each were worth fifty to seventy-five dollars. Plaintiff has expended $30 for lawyers' fees in this case.

Nazarenus, one of the defendants, testified that either of the horses was a good hack horse, and well worth $65; that they were sound so far as defendants knew,

except as to swollen legs; that they had been driven considerably over the hard and rough streets, but were in as good a condition as could be expected for a $65 horse; that plaintiff took the second horse in exchange, and afterward returned it and insisted on leaving it, but defendants told him the animal was his and he must keep it; and that witness has seen the first horse several times since, hauling wood and coal. Three other witnesses testified for the defendants, in brief, as follows: Chambers refused to give a warranty. The first horse was worth $65, and was a good hack horse. Its present owner paid $85 to a man who paid $50 for it, and is now using it to haul heavy drafts. Chambers called plaintiff's attention to the animal's sore legs. When plaintiff brought back the first horse, defendants refused to pay the money, but allowed plaintiff to take the second horse; and it was fully understood as an exchange of one for the other. The second horse, when returned, had evidently been driven hard and was foundered; it was the better horse of the two, and worth $75.

The jury found for the plaintiff $104.10. The defendants moved for a new trial on the following grounds:

(1) The verdict is contrary to law and evidence.

(2) The court charged thus: " The plaintiff says that, at the date mentioned by him, the defendant sold him a horse for $65 cash, that in making the sale the defendant warranted that the horse was altogether sound, but that in fact, the horse, so far from being sound, proved to be incurably lame and worthless, that he was damaged by such breach of warranty to the extent of the purchase price, with interest thereon to the present time."—Error, because an incorrect statement of the plaintiff's allegations; or if correct, it is unsupported by evidence.

(3) The damages found are excessive, and not in ac-

cordance with the measure as correctly charged by the court. The verdict allows $30 as expenses of litigation, which is unjust, inequitable, contrary to law, and unsupported by evidence.

The motion was overruled, and the defendants excepted.

J. C. JENKINS, for plaintiffs in error.

W. J. & J. R. ALBERT, *contra.*

SIMMONS, Justice.

1. The facts of this case will be found in the official report. Under these facts, the court did not err in refusing to grant a new trial upon any of the grounds set out in the motion. The charge of the judge is a full and fair exposition of the law governing the case. Under the charge, the jury found that there was an express warranty in the sale of the first horse, and that the plaintiff did not take the second horse in exchange for the first, except on condition that the second horse suited him. They also found by their verdict that the first horse was worthless. The first horse was returned to the defendants by the plaintiff, and they kept him. The second horse was also returned to them, and he was kept by them. The defendants therefore had both horses and the plaintiff's money. They were not entitled to keep the horse and the money too. The plaintiff was entitled at least to recover the money he paid for the horse.

2. The only difficulty we have had in affirming this judgment has been the question upon the allowance of counsel fees to the plaintiff by the jury. The code, §2942 declares, "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." We have carefully read over this evidence as sent up in the brief

thereof, and we think that the testimony shows that the defendants acted in bad faith towards the plaintiff. They kept both horses and refused to return the purchase money. Under these circumstances, we think the jury were justified, under this section of the code, in allowing the plaintiff his counsel fees in the case.

*Judgment affirmed.*