## ATLANTA RAILWAY & POWER COMPANY *v.* MONK.

1.  Where to an action of damages on account of personal injuries an amendment was allowed which alleged acts of negligence of an entirely different nature from those set up in the original petition, but in charging the jury the court gave instructions which expressly eliminated from consideration any acts of negligence charged in the amendment, and, in the light of the charge as a whole, the effect of the evidence introduced under the amendment must have been more advantageous than injurious to the defendant, the allowance of the amendment over the objection that it set up a new cause of action, whether originally erroneous or not, will not work a reversal of the judgment of the court below.

2.  The Carlisle mortality and annuity tables are standard tables, and will be admitted in evidence without proof of their correctness or that they are what they purport to be.

3.  On trial of an action against a street-railroad company, for damages on account of personal injuries received by the plaintiff while walking across a trestle, evidence that a person other than the plaintiff had been warned to keep the plaintiff and others off the trestle was, in the absence of anything to show that such warning was communicated to the plaintiff or was given in her presence, inadmissible to bind her with notice that the general public was not allowed on the trestle; and, being irrelevant to any issue in the case, it was not admissible as foundation for an impeachment of the witness.

4.  In such a case it is competent to show, by a witness proved to have been familiar with the operation of electric cars, the usual means of stopping such a car under given circumstances, regardless of the means of loading the car, the grade upon which it is running, or the speed at which it is run.

5.  It is also competent, in such a case, to prove by expert testimony within what distance a single car can be stopped on a given grade, though it appear that the train which caused the plaintiff's injuries was made up of three cars, and that the grade at the place where the injuries were received was not so steep as the one in the hypothetical question submitted to the witness.

6.  It is also admissible, in such a case, to show the general effect of curves upon the speed of a car, and this may be done by a witness who is an expert in the running of steam, but not of electric railroads.

7.  Where the charge of the court as given fully covers the points made in written requests to charge, it is not error to refuse to charge in the exact language requested.

8.  The evidence warranted a finding that the employees of the defendant did not exercise ordinary care to avoid injuring the plaintiff after her presence and peril were discovered by them; and accordingly it was not error to refuse a new trial on the grounds that the verdict was contrary to law and the evidence.

Argued July 6, — Decided August 12, 1903.

Action for damages.    Before Judge Reid.    City court of Atlanta.    December 20, 1902.

*Payne & Tye*, for plaintiff in error.

*Julius L. Brown* and *Arnold & Arnold,* contra.

29

CANDLER, J.    Mrs. Monk was run over by a car of the Atlanta Railway and Power Company, and received injuries which resulted in the loss of both her arms.    At the time of her injuries she was employed as a dancer by the Canton Carnival Company, which had, for two weeks previously, been giving shows upon what was known as the Midway, at an exposition or fair, held at Exposition Park, just outside the city of Atlanta.    The fair had just closed, and the Canton Carnival Company was preparing to move its effects and send its performers to another city.    About half past eleven o'clock at night, Mrs. Monk, with her husband and other employees of the Canton Carnival Company, was at Exposition Park, where she intended to board the train which was to take her from the city.    The party of which she was a member were in a part of the fair grounds somewhat distant from the place where the train was which they were to board, and it was their intention to ride to that place on a trolley-car of the Atlanta Railway and Power Company, which ran over a spur-track connecting with the track of the Southern Railway Company.    This spur-track ran over a trestle about 400 feet long, on the sides of which were placed planks which might be used by pedestrians as a footway.    The stream of water which the trestle spanned was between Mrs. Monk's party and the train they wished to take.    According to the plaintiff's evidence, the party waited at the end of the trestle for a trolley-car to take them to the train. A car passed them going in the opposite direction, towards the terminus of the spur-track inside the fair-grounds, and it was in evidence (though controverted by the defendant) that as the car passed the plaintiff's party at the end of the trestle, it stopped to discharge a passenger, and that the motorman was notified to stop for the party on his return passage.    The evidence is conflicting as to the length of time that elapsed before the car returned ; at all events, the party had started to cross the trestle on foot, and were overtaken and the plaintiff injured before they had gotten half way across.    At the terminus the car had taken on two "trailers," one a baggage-car and the other what was known as a gondola-car.    The evidence is hopelessly conflicting as to the speed of the cars upon the trestle, the opportunity of the motorman to have seen the plaintiff in time to have avoided the injuries, and the efforts, if any, made by him to stop the cars after he discovered their presence upon the trestle.    Several witnesses for the plaintiff, including the

plaintiff herself, testified that he not only had ample opportunity to have seen her, but that he actually did see her, in time to stop his cars before striking her ; that as she realized her danger she cried our pleadingly, " Stop, oh please stop;" and that he replied, " Go to hell," and made no effort whatever to check the speed of the cars. The plaintiff's suit as originally brought was a joint action against the Atlanta Railway and Power Company and the Southern Railway Company, but a nonsuit was granted as to the last-named defendant, and no exception was taken thereto. The original petition alleged that the employees of the street-railroad company had warning of the plaintiff's presence on the trestle before the car went thereon, that the motorman in charge of the cars had ample opportunity to stop them after discovering the plaintiff's danger in time to have avoided injuring her, and that he was guilty of gross and wanton negligence in not doing so. It also alleged that the trestle had been constructed for the use of pedestrians; that cross-ties of extra length had been used in its construction, and planks placed on the edges of the cross-ties on either side of the track, for use as a footway ; that the street-car company had invited pedestrians to use the trestle as a means of crossing the branch, and that it had been so used for more than six years; and negligence was charged against the company in failing to exercise ordinary care in guarding against injury to persons who might be on the trestle, and in failing to stop the cars after the position of the plaintiff should, in the exercise of ordinary care, have been discovered. By amendment it was alleged that "the defendants were grossly negligent in failing to have a car of sufficient size and power to transport the large railway cars" which were in the train that ran over the plaintiff; that the trolley-car which was used was inadequate for the service sought to be imposed upon it, and was overloaded at the time of the injury. This amendment was allowed over the objection of the defendants that it set up a new cause of action, and that its allegations were irrelevant, incompetent, and illegal, and did not set forth any act of negligence that would authorize a recovery. Exceptions pendente lite were filed to the allowance of the amendment, and error was assigned thereon in the bill of exceptions to this court. The answer of the street-car company was, in effect, a general denial of all allegations of negligence in the petition and the amendment.

In submitting the case to the jury, the court charged, as matter of law, that the plaintiff was a trespasser on the trestle at the time of her injuries, and that the company owed her no duty whatever until her presence upon the trestle was discovered, when the duty arose to exercise ordinary care to avoid injuring her. A verdict was returned for the plaintiff for $10,000. The company moved for a new trial, its motion was overruled, and it excepted.

1. It is clear that the amendment which was allowed over the objection of the defendant charged against it negligence of an entirely different character from that alleged in the original petition; but whether or not this constituted a new cause of action we do not, in the view that we take of the case, feel called upon to decide. It may be conceded, for the sake of the argument, that the amendment was erroneously allowed. The court, however, in its charge to the jury, instructed them as follows: "Your inquiry in this case, as to whether the defendant company was negligent or not, will be confined to the allegations of negligence that the plaintiff makes with reference to the conduct of the motorman after her presence became known to the motorman, — I mean in reference to the motorman and other employees of the defendant upon the train; and you could not predicate a finding of negligence against the defendant company upon the allegations in reference to the loading of the cars, nor upon there being two cars instead of one attached to the motor-car. So far as this plaintiff is concerned in this case, the defendant company had a right to load its cars as it pleased, and to attach as many cars to the motor-car as it pleased, and owed to this plaintiff no duty whatever [except] to exercise all ordinary and reasonable care and diligence for the protection of this plaintiff as soon as her presence upon the track became known to the employees in charge of the motor-car and the cars attached." In view of this charge, it would be idle to discuss whether or not the amendment should have been allowed,— indeed, in the light of the restrictions placed upon the jury by this instruction, the amendment and the evidence introduced under it could have had none but a beneficial effect upon the defendant's case; for if, as the amendment alleged and the witnesses testified, it is more difficult to stop a train of cars made up as this one was than would have been the case had a locomotive engine or a better construed motor-car been used, and if the plaintiff could only recover in the event

it was shown that the motorman, after discovering her presence on the track, could, in the exercise of ordinary care, have stopped in time to avoid injuring her, then it follows that any evidence germane to the amendment could only have a tendency to establish the contention of the defendant that it was impossible to stop the train by due care in time to prevent the plaintiff's injuries. The allowance of the amendment will therefore not work a reversal of the judgment of the lower court.

2. The motion for a new trial complains that "the court erred in the following ruling, to wit: Plaintiff offered in evidence what purported to be a copy of the Carlisle Mortality and Annuity Tables, as contained in 70 *Ga.*, page 845, and defendant, at the time said tables were tendered, objected to the same being received as evidence, because there was no evidence to show that they were the Carlisle tables. The court, over defendant's objections, admitted the copy of mortality tables and overruled defendant's objections thereto." We find no difficulty, under the various rulings of this court, in holding that the ground of the motion above quoted does not disclose any error on the part of the trial court. This is a standard table, and is admissible in evidence when offered, without any proof of its correctness or that it is in fact the Carlise table. In the case of *Western & Atlantic R. Co.* v. *Cox*, 115 *Ga.* 715, which is cited by counsel for the plaintiff in error as authority for the objection made, it was held that these tables are admissible in evidence without any proof of their correctness. From the opinion in that case it appears that counsel in the argument contended that there was no evidence before the court to show that the tables offered in evidence were what they purported to be, or that they were correctly figured in the volume of *Georgia Reports* from which they were taken, and that when challenged they were not evidence to prove any fact. As before stated, this is a standard table, and courts take judicial notice of it without proof. The court is presumed to know it wherever it sees it, whether in the appendix to the 70 *Ga.* or elsewhere. See the dissenting opinion of Chief Justice Simmons and Associate Justice Lewis in *Western & Atlantic R. Co.* v. *Hyer*, 113 *Ga.* 778, and the authorities therein cited, which fully sustain the position here taken. See also *Atlanta & West Point R. Co.* v. *Johnson*, 66 *Ga.* 259; *Central R. Co.* v. *Crosby*, 74 *Ga.* 738; *Richmond & Danville R. Co.* v. *Garner*, 91 *Ga.* 27.

3. The defendant sought to prove by Shields, a witness for the plaintiff, who was connected with the amusement enterprise in which the plaintiff was engaged, that he (Shields) had been warned not to have the show people go over the trestle on foot, on account of the danger involved. It was not claimed that the alleged warning was given in the presence of the plaintiff, or that it was communicated to her in any way. Shields emphatically denied that such a warning had been given. At the conclusion of his testimony on that subject the court, on motion of plaintiff's counsel, ruled the evidence out as hearsay and not binding on the plaintiff, and this ruling is complained of in the motion for a new trial. The grounds of the complaint are that the testimony was admissible as throwing light on the question whether or not the defendant acquiesced in the use of the trestle by pedestrians; and further, that the questions asked laid the foundation for an impeachment of the witness. It is quite clear that this evidence was not admissible for any purpose, and that the court properly excluded it from the jury. It is unnecessary to discuss whether evidence that one man had been warned to notify several other persons not to cross a trestle will be competent to meet the contention that the company had for more than six years invited pedestrians to use it as a footway, for in his charge to the jury the judge instructed them as matter of law that the plaintiff was a trespasser on the trestle and had no right thereon. It will, of course, not be seriously contended that the evidence sought to be elicited, even had it been favorable to the defendant, would have bound Mrs. Monk, in the absence of any showing that the warning was given in her presence or was in some way communicated to her. The answers given, therefore, being upon an utterly irrelevant and immaterial subject, could not form the basis of an impeachment of the witness. 1 Gr. Ev. (15th ed.) § 462; *Evans* v. *State,* 95 *Ga.* 469. There is nothing in the case of *East Tenn. R. Co.* v. *Daniel,* 91 *Ga.* 768, in conflict with what is here laid down. It was there held: "Where a witness, by way of accounting for his presence at the scene of the killing of an animal, states that immediately before going there, he made a purchase at a certain store, evidence is admissible in behalf of the opposite party showing or tending to show that he made no purchase on the occasion referred to. While this fact is not directly material on the circumstances of the killing, it is indi-

rectly material, because it contradicts the witness as to the train of events which led him to be present and thus tends to discredit him as to the fact of his presence." It will be observed that the rule is there distinctly recognized that a witness' may not be impeached upon a subject immaterial to the issues involved in the trial of the case, but it was pointed out that the evidence in question was indirectly material to an important phase of the case, viz., the presence of the witness at the scene of the killing. . In the case at bar it was not shown that the subject upon which it was desired to impeach the witness Shields was even remotely material to the issues involved.    It follows, therefore, that there is no merit in this ground of the motion.

4. Complaint is also made of the admission, over the defendant's objection, of the evidence of a witness who testified as to the usual means of stopping an electric car, and what is ordinarily the quickest way to stop such a car.    It was objected that it was not shown that the witness had had experience in handling cars loaded like the one that ran over the plaintiff.    We see no error in admitting this testimony.    The witness was shown to have been an expert on the subject about which he was testifying.    He had run as a motorman on electric cars in Atlanta for nearly three years, working on different lines, and had worked in the shops to learn something about electricity before he was put on a line.    Regardless of the manner in which any particular car was loaded, it was clearly competent to show to the jury the usual means of stopping all electric cars under given conditions.

5. Shaw, the witness referred to in the preceding division of this opinion, was also asked by counsel for the plaintiff, within what distance a single car could be stopped, under given conditions, going at a given rate of speed, on a grade at a given point in the city of Atlanta, which was admitted to be a steeper grade than the one at the place where the plaintiff was injured.    The evidence was objected to as irrelevant, on the ground that "the stopping of a train of cars is a good deal different from stopping one car in the city," and that the evidence was inadmissible without showing that the grade and the equipment of the cars at the two places were substantially the same.    The objection was overruled and the evidence admitted, which ruling is assigned as error in the motion for a new trial.    While we fail to see the substantial value to the plaintiff of

this evidence, its admission can hardly be held to be erroneous. It was competent to show to the jury by expert testimony within what distance a single car could be stopped on a steep grade, not as proof that the cars which ran over the plaintiff could have been stopped within the same distance, but as throwing light upon the general question of stopping cars on grades, and from that they might draw their own conclusions as to the relative difficulty of stopping a more heavily loaded train of cars on a lighter grade.

6. The complaint in the motion that the court erred in admitting the evidence of a witness as to the general effect of curves on the speed of a car is totally without merit. It was in evidence that the track of the defendant company curved near the trestle on which the plaintiff was injured, and that the cars which ran over her passed over this curve before coming on the trestle. It was clearly admissible to show to the jury the general effect of curves upon the speed of cars, irrespective of their motive power, in order to show that the natural tendency in the case under consideration was for the speed of the cars to be diminished before the train came upon the trestle. Nor do we think there was any error in allowing the plaintiff to prove, by witnesses who were shown to have been experienced steam-railroad men, what effect the curve would naturally have upon the speed of the two cars attached to the motor-car, and within what distance such cars could be stopped under given conditions. This evidence was objected to on the ground that the witnesses were not shown to have been experts in the running of electric cars, and consequently were not competent to give their opinions upon the questions propounded to them. While it is true that they were not shown to have been experts in electricity or in the running of electric cars, they were, as has been stated, shown to have had expert knowledge in the running of trains on steam railroads, and it must be borne in mind that the cars about which they testified were ordinary steam-railroad cars. It would seem to go without the saying that their opinions as to the running and the ability to control such cars under given conditions must necessarily have been more valuable than that of an ordinary electric motorman, whose opportunities for obtaining such information are, in the nature of things, exceedingly limited.

7. The grounds of the motion for a new trial which complain of the refusal of the court to charge as requested present no reason

for reversing the judgment rendered.    As pointed out in the state-
ment of facts preceding this opinion, the court charged as matter
of law that the plaintiff was a trespasser on the defendant's track,
and that the street-car company owed her no duty whatever except
to exercise ordinary care to avoid injuring her after her presence
on the trestle became known to the employees of the company.
As to negligence the jury were expressly restricted to the single
issue whether after discovering Mrs. Monk's presence and peril, the
motorman used ordinary care to avoid running over her.    The
charge as given went to greater lengths in favor of the defendant
than any of the charges which were requested by its counsel.    Of
course the defendant can not complain of the refusal to charge in
the exact words requested, when the substance of the requests was
covered by the charge given.

8. The grounds of the amendment to the motion for a new trial
which have not been dealt with in the foregoing were abandoned
by counsel and not argued in this court.    We are left, then, the
single question, was the verdict contrary to the evidence?    As will
have been seen, under the charge of the court, it was necessary, in
order for the plaintiff to recover, that the jury should find that the
plaintiff's injuries were wantonly inflicted.    There was evidence
that the motorman was warned, before the cars reached the tres-
tle, that the plaintiff and her party were on it, and that he made
no effort to stop, but went on, indifferent to their fate.    The plain-
tiff testified: "The people on the trestle . . stopped, and looked
back and saw the car coming toward us.    I screamed.    I screamed
at the top of my voice.    The other people screamed also.    It, the
car, did not stop at all.    It didn't seem to slow up to me. . .
Then, after it reached the trestle, the speed was not abated or
slackened. . .    As to what effort the motorman made to wind
his brake, I saw none.    As he got very near I begged for him to
stop.    When he got close to me, I halloed, 'Stop, stop, stop; oh,
please stop!' . .    He did not stop. . .    He said, 'Go to hell!'"
Other evidence for the plaintiff was to the same effect, and there
was ample authority for the jury to find that the motorman, after
discovering the presence of the party on the trestle, made no effort
whatever to check the speed of the cars.    We confess that the evi-
dence of the plaintiff's witnesses as to the conduct of the motorman
after learning of the perilous situation in which Mrs. Monk was

placed almost staggers credulity; for it is well-nigh inconceivable that any man could be such a monster as to deliberately and wantonly run down, and perhaps slaughter, a half score of helpless victims placed in such a situation as were these persons. It was for the jury, however, to say whether or not this evidence was the truth. They had all the facts before them, and it was peculiarly their province to pass upon questions of this sort. The trial judge was satisfied with their finding, and, as has been seen, that finding was amply supported by evidence. The overruling of the general grounds of the motion for a new trial, that the verdict was contrary to law and the evidence, will not, therefore, work a reversal of the judgment of the court below.

*Judgment affirmed.  By five Justices.*