GRANT *v.* HART *et al.*

No. 14779.   APRIL 7, 1944.   REHEARING DENIED MAY 5, 1944.

*James A. Branch, George C. Spence,* and *Thomas B. Branch Jr.,* for plaintiff in error. *Houston While,* contra.

DUCKWORTH, Justice. ■ In ground 4 of the motion for new trial exception is taken to the charge on the ground that the court instructed the jury generally on the law and the facts as in ordinary cases, and did not confine the charge to the special issues of fact submitted to the jury. Error is claimed here because the court, after instructing the jury that the case was based upon alleged fraud and deceit practiced upon the petitioners by the defendant, acting with and through others, instructed the jury that if they should reach the conclusion that the defendant was not guilty of the fraud and misrepresentation as alleged, or that the plaintiff had failed to carry the burden by a preponderance of the evidence that the defendant was guilty of the fraud and deceit as alleged, then the jury would be authorized to discontinue their investiga-

tions and make no further inquiry, "because in that event the plaintiff would not be entitled to recover."

We have just stated the substance of the charge complained of in this ground, which shows that the court did inform the jury as to the legal consequences of their finding of fact on the question of fraud. The plaintiff in error contends that this nullifies the intent and purpose of the Code, § 37-1104, which gave him the right to have the jury's verdict limited to answers to specific questions alone. It is said in 64 C. J. 726, § 638, that, "Where special issues are submitted or a special verdict is required, it is improper to instruct the jury on the law of the case, and only sufficient in-structions as to the general law should be given as will enable a jury intelligently to answer the questions. . . It has been held error to instruct the jury either expressly or by necessary implication as to the effect of particular answers on the ultimate right or liability of either party." Relying upon this general statement of the law, the plaintiff in error takes the position that it is error, in any case submitted only on questions of fact, for the trial judge to inform the jury as to the legal consequences of their answers to such questions. He cites Wichita Falls &c. Co. v. Mendoza (Tex. Civ. App.), 240 S. W. 570, where it was held that, by indicating to the jury the effects of their findings on certain issues, the charge destroys the effect and amounts to a denial of such a submission of the case. Counsel cites also *Bell* v. *Hutchings, 86 Ga. 562, 571* (12 S. E. 974), where it is said: "It would be useless generally to submit special questions of fact to the jury if the general question on the merits were submitted also at the same time. It is better to allow the jury to find as to special questions of fact with'out knowledge on their part as to the legal bearing of their findings." This court was there dealing with a case where the main relief sought was rescission, and the court framed one of the questions so as to require a finding by the jury either for or against rescission. It is obvious that the answer to that question settled the entire case and eliminated any necessity for answers to the specific questions; but even then the action of the court was not held to be error, but was held to be merely improper. The facts in this particular case are such that this court can not properly decide the general question whether or not in any case thus submitted it is reversible error to inform the jury of the legal effect of their

answers. Here, specific questions submitted at the instance of the movant required the jury to refer to the allegations of fraud and misrepresentations as made in the petition in specified paragraphs thereof, and to find whether or not such misrepresentations were made, if they were false, and if the petitioners relied on them and were injured thereby. Other questions required the jury to find the market value of the properties surrendered by the petitioners to the defendant, and the value of the properties traded to the petitioners by the defendant therefor, thus finding the extent of the petitioners' injuries in dollars and cents. Therefore it can not reasonably be said that, in the absence of the instructions complained of, the jury did not know the legal consequences of their answers to the questions submitted.

It has been strongly urged by counsel that the object and purpose of this statute are to keep the jury ignorant of the legal effect of their answers to the questions submitted, in order that the jury may find the true facts without being influenced by the circumstances in the case. No doubt the primary object of the statute is to simplify a complicated equity case in order that the jury may intelligently settle the controlling issues by making answer to specific questions. It is the general policy of our law that a trial of a case in court be open and public, and, save the deliberations of the jury, free from secrecy. There is no law which prevents the court from sending out with the jury in every equity case the pleadings therein, and it seems to us that any jury might be expected to discover the issues from the pleadings, and thus to know with reasonable certainty the legal consequences of their answers to specific questions submitted. Certainly in this case the questions submitted together with the pleadings informed the jury on this matter as fully as did the charge complained of. This ground is without merit.

■ Grounds 5 and 9 except to the charge submitting the question of punitive damages and expenses of litigation. The criticism here is that, in this equity action against the defendant as trustee ex maleficio, these items were not recoverable; and further that the matter was submitted in a form permitting the jury to make general findings rather than, as insisted by the defendant at the time, in a form consisting of specific questions. The defendant in error having stricken the item of punitive damages as found by the jury,

we need not here consider that matter further. The form of submission is not subject to the criticism made. The court instructed the jury that, if they should find the plaintiff entitled to these items of damages and expenses, then their verdict should say, "We, the jury, find as follows: (a) $......; (b) Nothing." This was as specific as the law requires, and constitutes a special finding, and hence is not subject to the criticism that it is a general finding. "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." Code, § 105-2002. "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith . . or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." § 20-1404. See *Chambers* v. *Harper,* 83 *Ga.* 382 (9 S. E. 717) ; *Robinson* v. *Holst,* 96 *Ga.* 19 (3) (23 S. E. 76) ; *Smith* v. *Williams,* 117 *Ga.* 782 (4) (45 S. E. 394, 97 Am. St. R. 220) ; *Traders Insurance Co.* v. *Mann,* 118 *Ga.* 381, 384 (45 S. E. 426) ; *McKenzie* v. *Mitchell,* 123 *Ga.* 72 (51 S. E. 34) ; *Mendel* v. *Leader,* 136 *Ga.* 442 (3) (71 S. E. 753) ; *Felder* v. *Paulk,* 165 *Ga.* 135 (6) (139 S. E. 873) ; *O'Neal* v. *Spivey,* 167 *Ga.* 176 (3) (145 S. E. 71) ; *Christopher* v. *Almond,* 177 *Ga.* 211 (169 S. E. 899) ; *Walker* v. *Grand International &c. Engineers,* 186 *Ga.* 811 (2) (199 S. E. 146). It will be observed that the last-cited Code section declares that, "if the defendant has acted in bad faith," expenses of litigation may be recovered. The bad faith there referred to means bad faith in the transaction which constitutes the basis of the action. In the present case it means the bad faith in which the defendant acted in the stock transactions about which the petition complains. The judge did not err in submitting this question to the jury, or submitting it in the form in which it was submitted. These grounds are without merit.

Ground 6 excepts to a portion of the charge which was as follows: "Now, gentlemen, a constructive trust is not a rescission of a contract. In a constructive trust there is an affirmance of the contract, and therefore the legal title is treated as in the person holding the property. Here it is alleged to be in the defendant." No question submitted to the jury involved this subject. Hence, this charge did not and could not have affected the jury's answer

to any question. Where, as here, a special verdict is returned, only portions of the charge connected with and affecting one or more of the questions answered by the verdict may be made a ground of a motion for new trial. *Dozier* v. *McWhorter*, 117 *Ga.* 786 (6) (46 S. E. 61).

Grounds 7 and 15 relate to the giving in charge of the law as to when declarations and acts of an agent are imputable to the principal. The court charged that, "It is contended, gentlemen, that certain agents of Grant participated, and the law is, gentlemen, that if in the prosecution of the master's business the agent makes any representation with reference to the master's business, then such statements are imputable to the master." This charge is complained of in ground 7, where it is contended that the charge should have further restricted the statements of an agent to such portions of the master's business as come within the scope of the agency. It is declared in the Code, § 4-307, that "The principal shall be bound by all representations made by his agent in the business of his agency." Reasonably interpreted, the instruction complained of was a substantial statement of this principle. It spoke of "the master's business," meaning thereby some particular business. and not merely any business in which the master might be engaged. It also used the language, "the agent," which necessarily meant the agent for that particular business, and not an agent for some other business in which the agent was not employed. It might be paraphrased as follows: "It is contended, gentlemen, that certain agents of Grant participated, and the law is that, if in the prosecution of the master's business the agent for that business makes any representations with reference thereto, then such representations are imputable to the master." By its plain and necessary meaning it tied the agent to the particular business in which the representations were made, and thus limited the representations to "the business of his agency," within the meaning of the foregoing code section. The Code, § 4-302, providing that "the principal shall be bound by all the acts of his agent within the scope of his authority," is a mere amplification of § 4-307, supra; and the same is true of § 4-315, in so far as it refers to scope of authority. Thus, the charge as given covered in general terms the substance of three of these sections in so far as applicable, and therefore was a correct and complete statement of the law, even

though it did not in express terms limit the representations to the scope of the agent's authority. This being true, the charge was not erroneous because the court did not go further and charge that, "in order for the master to be bound by statements of his agent, such statements must have been made within the scope of the authority of the agent." A charge embracing a correct principle of law is not rendered erroneous by a failure to charge on some other legal principle applicable to the case. *Lively* v. *Inman,* 135 *Ga.* 10 (4) (68 S. E. 703); *Peeples* v. *Rudulph,* 153 *Ga.* 17 (2) (111 S. E. 548). Nor, in view of the foregoing general instruction as given, was it error, as contended in ground 15, that the court failed, without a request, to charge that, "before a principal may be held liable for the acts of his agent, the acts done by the agent must have been done by the agent while engaged on or about the business of his principal, and the acts done by the agent must have been within the scope of the authority conferred, or apparently conferred, on the agent by the principal." If the defendant desired such a charge, it should have been requested. The Code, § 4-315, declares that "The declarations of the agent as to the business transacted by him shall not be admissible against his principal, unless they were a part of the negotiation, and constituting the res gestæ, or else the agent is dead." This section, however, has reference only to the admissibility of declarations as evidence, and is not pertinent to the present question. We are not here dealing with a general or special demurrer to a pleading or with the admissibility of evidence, and decisions in reference to these matters are not applicable. Grounds 7 and 15 of the motion are without merit.

The foregoing represents the view of the majority of the court as to grounds 7 and 15, and was written according to their direction. The writer is unable to accept the reasoning therein and feels compelled to dissent therefrom in view of the general importance of the question involved. It will be observed that the majority recognize the rule which requires that, in order to bind the principal, declarations of an agent must be within the scope of the agency, but they approve a charge which fails to contain this qualification. I am mindful of the fact that we are here dealing with an instruction by the court to the jury, which must guide the jury in fixing the rights of the litigants. The jury were authorized

to make a finding on this subject that comes within the reasonable scope of the language of the charge. The charge authorizes the jury to impute to the principal declarations of his agent, provided only that such declarations are made in the prosecution of any of the master's business, and with reference to any of the master's business, and this without regard to whether such declarations are within the scope of the authority of the agent. On such a vital phase of this case, the instructions to the jury should have been full, clear, and correct. Of course, the charge as paraphrased by the majority would have been sufficient, but the very fact that the majority find it necessary thus to paraphrase the charge as actually given by the trial judge demonstrates that the charge complained of is not clear, and does not express the controlling law on the subject. It would be a dangerous rule that would authorize a trial judge in all cases involving the responsibility of a principal for his agents, to instruct the jury that they may impute to the principal declarations of an agent without specifically limiting such declarations only to those which come within the scope of the agent's authority or apparent authority. It seems to me that it is begging the question to say that, in order for the movant to have the benefit of an instruction which is admittedly an essential part of the law on this subject, he would be required to make a timely written request so to charge. I agree with the statement, which is supported by the authorities cited by the majority, that a correct charge on one principle of law is not subject to criticism because it fails to embrace a correct charge on some other principle of law; but this rule has no application here, where the charge as given is within itself incomplete. As pointed out in ground 7, a Mr. Gilliland. admittedly an agent of the defendant for the purpose of selling securities, introduced the co-conspirator Spaulding to Mr. and Mrs. Rocker and told them that Spaulding was the agent of the defendant. This statement by the agent was made while such agent was in the prosecution of the master's business, to wit, traveling for the purpose of making sales of securities, and it related to the master's business, in that it stated that Spaulding was an agent of the master. Hence, under the instructions complained of, the jury was not only authorized but required to impute to the defendant the declarations of his agent that Spaulding was the agent of the defendant. There is not a scintilla of evidence, circumstantial

or otherwise, in this record of five hundred pages, to show or intimate that the agent Gilliland had any duties or authority in relation to that part of the defendant's business consisting of the employment of agents in that business. The declaration here related to that part of the defendant's business having to do with employing agents, and is separate and apart from any portion of the functions and duties of the agent Gilliland, which were confined solely to that of making sales of securities. This record defies a denial of the assertion that, in thus declaring Spaulding to be an agent of his principal, Gilliland departed from the scope of his agency and authority. Therefore the principal could not as a matter of law be charged with such unauthorized declarations. See generally, on the subject of agency, *First National Bank of Macon* v. *Nelson,* 38 *Ga.* 391 (95 Am. D. 400) ; *Vardeman* v. *Penn Life Ins. Co.,* 125 *Ga.* 117 (54 S. E. 66, 5 Ann. Cas. 221) ; *Columbus Show Case Co.* v. *Brinson,* 128 *Ga.* 487, 489 (57 S. E. 871) ; *Franklin County Lumber Co.* v. *Grady,* 133 *Ga.* 557 (66 S. E. 264) ; *Commissioners of Decatur County* v. *Curry,* 154 *Ga.* 378 (5) (114 S. E. 341) ; *Scott* v. *Kelly-Springfield Tire Co.,* 33 *Ga. App.* 297 (4) (125 S. E. 773) ; *Mooneyham* v. *N. C. & St. L. Ry. Co.,* 33 *Ga. App.* 406 (5) (126 S. E. 736).

■ Ground 16 excepts to the refusal to charge, as requested in writing, that the defendant could not be chargeable with certain alleged writings of an alleged agent of the defendant unless the jury should find that the defendant knew of the agent having done such writings or was responsible for his having done so. Ground 17 excepts to the refusal to charge, as requested, with respect to other writings by the same agent, that the jury would not be authorized, without some evidence direct or circumstantial, to infer that the defendant knew of such writings or authorized the alleged agent to do the writing. The requests to charge both imply that if the principal knew of the acts of the agent he would be chargeable therewith. The requests are both inaccurate in this respect. Knowledge upon the part of the principal of unauthorized acts of an agent, where there has been no ratification or estoppel, does not render the principal liable therefor. On the other hand, authorized acts of the agent are binding upon the principal, although he has no knowledge thereof. Therefore the two requests were incorrect. Requests to charge must be perfect, and unless they are so it is not

error to refuse them. See *Lewis* v. *State*, 196 *Ga.* 755 (27 S. E. 2d, 659).

◼ Ground 8 complains of an excerpt from the charge on the question whether or not the petitioners were barred by releases executed to Spaulding and Martin, each of which acknowledged receipt from Spaulding and Martin of stated amounts in cash. It is contended that this charge was harmful to the defendant, in stating that "the defendant says that the plaintiffs released, by the writing set out and attached to the plaintiffs' petition, the joint tort-feasors, that is, Martin and Spaulding, and if, at the time the plaintiffs signed the release, they knew of the alleged fraud, if any, the defendant also would be discharged." This charge is assailed upon the ground that the court in effect told the jury that the defendant claimed and contended that he was a joint tort-feasor, whereas the defendant denied any such connection. We think that this criticism is without merit, for it is plain that the court merely stated the contentions urged by the defendant, that if a conspiracy had been shown, this release would be a bar to the petitioners' action against the defendant as a joint tort-feasor, since the release of the other joint tort-feasors would constitute a release of the defendant. The charge was not such as was likely to have misled the jury, and this ground is without merit.

◼ Ground 10 excepts to a portion of the charge on the subject of impeachment. It is not contended that the court inaccurately stated the law on this subject, but the ground of complaint is that the charge was unfair to the defendant, and prejudicial to his case. There was in evidence an allegation of the petition to the effect that the petitioners informed Spaulding and Martin that the defendant had requested them not to dispose of the Fulton Industrial Securities Corporation bonds without first informing the defendant. This part of the petition was read to the petitioner, Mrs. Hart, and the petitioner, Amos A. Trotman, together with the attached affidavit which both witnesses testified they signed, the affidavit reciting that the allegations were true and within the knowledge of the affiants. But each witness testified on the trial that the allegation that they told Spaulding and Martin about the defendant was untrue, and that neither of them had ever told Spaulding and Martin that the defendant requested them not to dispose of the bonds without notifying him. There was evidence to show

previous contradictory statements made by the defendant, and the charge complained of begins with the statement: "The plaintiffs contend in this case that the defendant who testified as a witness in his own behalf has been impeached by proof of contradictory statements made material to his testimony and to the issues in the case." Further on in the charge, the court said, "As I have stated, the plaintiffs contend," etc. Thus the court definitely applied the charge on impeachment to the defendant alone; but it was not harmful error in so far as the ground of objection shows. The contradictory statements of the petitioners did not relate to the question whether or not the defendant had told them to inform Spaulding and Martin that the defendant had requested them not to dispose of the Fulton Industrial Securities Corporation bonds without first notifying him, but only to the question whether or not they had imparted this information to Spaulding and Martin on their own initiative. In the latter case, the defendant could not be held responsible for their unauthorized statement, and consequently, what was said without his direction would not be relevant or material to any issue in the case, and therefore would not be a ground of impeachment. See *Hudgins* v. *Bloodworth,* 109 *Ga.* 197 (34 S. E. 364); *Atlanta Railway &c. Co.* v. *Monk,* 118 *Ga.* 449, 454 (45 S. E. 494); *Luke* v. *State,* 184 *Ga.* 551 (3) (192 S. E. 37).

The general grounds 1, 2, and 3 assail the verdict as being unsupported by the evidence. We will not here undertake to set forth in full or literally the evidence which we think supports the jury's findings. In substance that evidence is, first, that the defendant, in his answer, denied ever having had business transactions with Spaulding and Martin, and asserted that they were strangers; whereas, on the trial, the petitioners introduced four checks signed by Spaulding, payable to the defendant, endorsed by the defendant, and showing payment by the bank. When confronted with these checks, the defendant's explanation was that he and Spaulding were living at the same hotel, and Spaulding, being a traveling man, frequently found need for expense money, and as an accommodation to Spaulding the defendant cashed his checks. It was also shown that Mrs. Hart had deposited her bonds in a safety deposit box in Columbus at the request of and with the knowledge of the defendant; and, without first having been notified by the petitioners, Spaulding and Martin told the petitioners that

they had the bonds in a safety deposit box in Columbus. A Mr. Gilliland, an admitted agent of the defendant, introduced Spaulding to Mr. and Mrs. Rocker, and informed them that Spaulding was an agent of the defendant; this same Gilliland having just prior thereto sold Mr. Rocker some bonds. Upon the trial, a brother of Mrs. Niblack, who testified that he was present at his sister's home in Florida in 1933 when Spaulding and another man who gave his name as C. A. Black traded his sister some worthless insurance stock for Georgia Power Company stock, identified a photograph of the defendant as that of the man who was personally present with Spaulding when he gave his name as Black. There was evidence that this same Georgia Power Company stock was later in the possession of the defendant, who sought by legal process to have it transferred in the name of R. E. Howard; and that upon being informed by Mrs. Niblack of a fraudulent transaction in which she was deprived of her stock and of her intention to recover it by legal action, the defendant voluntarily surrendered the stock to her. There was evidence also that, after Spaulding and Martin obtained the bonds from the petitioners, some of the same bonds were purchased and owned by the defendant, and thereafter a letter was written by the defendant's agent, King Grant, to Mrs. Hart, inquiring of her if she still owned those bonds. There were many other circumstances, not necessary here to recite, which, together with this evidence, authorized a finding that the defendant was in conspiracy with Spaulding and Martin in obtaining the petitioners' bonds. It is stated in 15 C. J. S. 1045, § 30, that "circumstantial evidence, if sufficiently strong, may outweigh the positive statement of a party or witness." This is true. In the present case; the defendant, as well as the alleged co-conspirator Spaulding, positively denied that the defendant had any connection with Spaulding. There was evidence by the defendant which, if believed, would show that he could not possibly have been at the home of Mrs. Niblack when Spaulding traded for her stock; but this testimony serves only to make an issue of fact, and does not amount to a legal refutation of the various facts and circumstances tending to show the connection of the defendant with Spaulding and Martin in the transaction complained of. We recognize the rule as stated in 15 C. J. 1048, § 30, that "the evidence must be, and is sufficient if it is full, clear, and convincing or satisfactory,

and the inference therefrom of the conspiracy must be reasonable, probable, and unstrained." The evidence in the present case is sufficient to meet that test. It was stated by this court in *Dixo* v. *State*, 116 *Ga*. 186 (9) (42 S. E. 357), "The existence of a conspiracy may be proved by circumstantial as well as by direct and positive testimony." It is reasonable, and it does not require one to strain, to infer a conspiracy from the fact that the defendant falsely denied his acquaintance with Spaulding and denied having had business dealings with him until confronted with proof showing intimate personal relations, as well as proof of business transactions, and the presence of Spaulding at different times in the defendant's office or place of business. If the jury believed the testimony of Mrs. Niblack's brother that the photograph of the defendant was the photograph of "C. A. Black," who was present with Spaulding when he perpetrated a fraud upon his sister, then it did not require the jury to strain to infer from that fact that the defendant was connected with Spaulding in the business of fraudulently trading worthless stock. If there was no intention to cover up, there was no reason for the defendant's brother and agent, King Grant, to write Mrs. Hart, inquiring if she owned the bonds which the defendant owned at the time and knew that Mrs. Hart did not own. The law should not, and does not, authorize a finding that a conspiracy exists merely because of some speculative suspicion; but where, as here, the proved facts all point directly to the defendant's involvement, and the probable and unstrained inference therefrom are that he participated in the fraudulent transaction, a finding of a conspiracy is authorized. The alleged similar transactions constitute circumstantial evidence relevant to the issue of the conspiracy as alleged in the petition. The general grounds of the motion for new trial are without merit.

Grounds 11 and 12 complain of evidence admitted over objection. This evidence was testimony of Mrs. E. D. Spooner, reciting her transaction with W. E. Martin, wherein he fraudulently traded her some of the worthless life insurance company stock for valuable stocks, and documentary evidence connected therewith. Grounds 13 and 14 complain of testimony of Mrs. Helen C. Rocker, relating to a transaction wherein J. O. Spaulding fraudulently traded her some of the same insurance company stock, and documents in connection therewith, all of which was objected to on the grounds that

681

it was irrelevant and that it did not appear that the defendant was connected therewith.

Our ruling on the general grounds determines these exceptions adversely to the movant. Since the evidence authorized a finding of conspiracy between J. O. Spaulding, W. E. Martin, and the defendant, it necessarily follows that the defendant was shown to have been connected with these deals involving his co-conspirators. There were other circumstances indicating his connection with these matters.

■ The final decree is excepted to, and it is contended that, in view of the evidence showing a release of Spaulding and Martin for a valuable consideration, the petitioners are barred from prosecuting this case against the defendant as a co-conspirator, and that as to that part of the case a judgment and decree in favor of the defendant should have been entered. It is further contended that the court should not have compounded interest, and should not have allowed future interest on the portion of the judgment representing interest. On the question whether or not the petitioners released the alleged co-conspirators, the jury found that the petitioners are not barred from prosecuting this case on that ground. The releases upon which this objection is based were executed as a part of the alleged fraudulent transaction, and, hence, the jury might well have found that such alleged releases, being tainted with fraud, had no binding effect upon anyone. Certainly there is nothing in this record to show that Spaulding and Martin, at the time of procuring these releases, paid anything in settlement of the claim of the petitioners based upon their fraud in the stock and bond transaction. Whatever else the release might have settled and satisfied, it did not settle the petitioners' claim against them based upon the fraud perpetrated upon them in the stock and bond transaction. Hence, no part of the cash recited in the release was paid in satisfaction of their fraud. The court did not err in entering the decree in favor of the petitioners, which conforms to the findings of fact made by the jury.

On the question of compound interest, we think the statute sustains the decree. It is declared in the Code, § 108-415, that "The interest to be charged against trustees shall be at the rate of seven per cent. per annum, without compounding, for six years from the date of their qualification; and after that time at the rate of six

per cent. per annum, annually compounded, but any trustee may relieve himself from this rule by returning annually the interest actually made and accounting for the balance of the fund. Any distributee may recover greater interest by showing that the trustee actually received more, or that he used the funds himself to greater profit." On the trial of an equity case, in the discretion of the judge, compound interest may be charged on a final settlement with an implied trustee who fraudulently obtains possession of the property, as well as against a trustee appointed who rightfully obtains possession of trust property. *Adams* v. *Jones,* 39 *Ga.* 479 (3). In *Tippin* v. *Perry,* 122 *Ga.* 120, 125 (50 S. E. 35), it is said: "We think that the statute [Ga. L. 1847, Cobb, 336], following the old practice as to periods of rest, intended that there should be a rest at the expiration of six years from the beginning of the computation of interest, when the principal and accrued interest should be added together and a new principal formed upon which to begin to calculate the compound interest." It is further pointed out in that opinion that, unless the interest is thus compounded, seven per cent. simple interest would be more than compound interest, and, hence, the purpose of the statute in imposing compound interest as a penalty would be defeated. On the same subject, see *Fall* v. *Simmons,* 6 *Ga.* 265; *Kenan* v. *Hall,* 8 *Ga.* 417; *Hamilton* v. *Reese,* 18 *Ga.* 8; *Royston* v. *Royston,* 29 *Ga.* 82 (9). The decree in the present case computes simple seven per cent. interest on the principal for a period of six years, and at that time takes the sum of the principal and interest as a new principal upon which six per cent. interest, compounded annually to the date of the judgment, is calculated. This conforms to the law, and the decree is not subject to the criticism on this account. A further attack upon the decree is, because it provides for future interest at seven per cent. per annum on the total amount of the judgment, which includes both principal and compound interest. We think that this criticism is without merit, because the very essence of compound interest makes it become a part of the principal, and, hence, each year the compounded six per cent. interest becomes a part of the principal, and that interest to the date of the judgment becomes principal. We recognize the rule stated in *Bank of Tupelo* v. *Collier,* 191 *Ga.* 852 (3) (14 S. E. 2d, 59), that only that part of the judgment representing principal shall draw future interest,

but that rule is applicable in a case where there is no compound interest, and has no application in the present case where the interest is compounded by virtue of the statute. The decree is not subject to any of the attacks made thereon.

*Judgment affirmed. All the Justices concur, except Duckworth, J., who dissents from headnote 4 and the corresponding division of the opinion, and from the judgment of affirmance.*