Fall *vs.* Simmons and others.

---

No. 39.—JOHN S. FALL, plaintiff in error, *vs.* ADAM Q. SIMMONS and others, defendants.

[1.] When a cause is submitted to the Jury on the bill and answer and replication, and the defendant introduces no evidence, the defendant is entitled to the conclusion in the argument.

[2.] An administrator who is guilty of gross neglect, in not making returns of the condition of the estate in his hands: *Held,* to be liable to a distributee for the balance in his hands, after allowing all disbursements, with interest from the time it fell due, for six years, to be compounded at the end of that term, and at the end of every subsequent term of six years.

[3.] *Held,* that an executor, administrator or guardian, who fails to make annual returns, according to law, forfeits all commissions for his trouble in managing the estate.

[4.] Charges in a bill, by a distributee against an administrator, that he had frequently called upon him to account and pay up: *Held,* to be immaterial, and when denied by the answer, not necessary to be proven under a replication.

In Equity, in DeKalb Superior Court. Tried before Judge HILL, September Term, 1848.

Adam Q. Simmons and others, as the distributees and heirs at law of William Trimble, deceased, filed their bill against John S. Fall, the administrator of said Trimble, returnable to the Supe-

rior Court of DeKalb County. Attached to their bill was an exemplification of the returns of said Fall, as administrator, showing his actings since 1825, as far as he had made returns. To the answer of Fall there was also attached an exemplification of the same and an additional return.

On the trial, the complainants offered in evidence to the Jury these two exemplifications, and closed their case. The defendant, having introduced no testimony, claimed the right to conclude the argument to the Jury, which motion the Court overruled.

A verdict having been rendered for complainants, defendant's counsel moved for a new trial, on the following grounds:

1. Because the Court refused the motion of defendant's counsel, and decided that they were not entitled to conclude the argument of the cause.

2. Because the Court erred in charging the Jury, that the general denial of the defendant in his answer to the general, formal charge made in complainants' bill, that they had again and again applied to the said defendant, and requested him to come to a full and fair settlement, and account to and pay over to them the sums of money due them respectively, was not such a material part of said bill as to make it necessary that the denial in said answer must be contradicted by evidence, to entitle the complainants to recover the full amount of interest and costs which may be due.

3. Because the Court erred in charging the Jury, that in computing interest in this case, the Court thinks it would be equitable, and they should make rests at the end of every six years from the time the notes for which the property sold were due and disbursements allowed, and compound the interest on the balance in the administrator's hands.

4. Because the Court erred in charging the Jury, that the defendant was not entitled to any commissions, notwithstanding commissions had been allowed by the Court of Ordinary, which decision had not been reversed by appeal or otherwise, the exemplification showing that he had not made regular and annual returns.

5. Because the Jury found contrary to the law and evidence.

The Court overruled the motion and the defendants excepted.

EZZARD, for plaintiff in error, referred to the following authorities:

Fall *vs.* Simmons and others.

Upon 1st ground—*Rules of Court*, 15th *Rule in Equity. Cooper's Eq. Pleading*, 328. *Story's Eq. Pleading*, 674, *and note.* 3rd ground—2 *Kent's Commentaries*, 188. 2 *Story's Eq.* §1277. *Atty. Genl. vs. Lolly*, 2 *Cond. Eng. Ch. R.* 528. *Dunscomb vs. Dunscomb*, 1 *Johns. Ch. R.* 508. *Phillips' Law Reporter*, Sept. No. 1848, 217. *Wright vs. Wright*, 2 *McCord's Ch. R.* 200. 4th ground—*Stell vs. Glass*, 1 *Kelly's Rep.* 486. *Prince's Digest*, 226. 2 *McCord's Ch. Rep.* 195. 2 *Ib.* 9. 1 *Hill's Ch. Rep.* 210. *Rice's Eq. Reps.* 2.

CLARK, for defendant in error, relied on the following points and authorities:

Exhibits attached to defendant's answer, and referred to as part thereof, may be evidence or pleading. *Story's Eq. Pleadings*, 658, '9, 661, 674 *and* '5. 5, 15 *and* 17 *Equity Rules Sup. Court.*

The allegation that complainants have again and again requested defendant to come to a full and fair settlement with complainants, is formal and need not be answered. If answered, complainants not held to prove such charge. *Story's Equity Pleadings*, 220, '1, '2, 654.

Compound interest will be allowed in cases of gross delinquency, or when necessary to reach the interest made by trustees. *Hovenden on Frauds*, 433. 11 *Vesey's R.* 92. 13 *Ib.* 408. 1 *John. Ch. R.* 620. 2 *Story's Equity*, 518. 2 *Kent's Com.* 231. *Prince's Digest*, 223, '4, '6. *Acts of* 1847.

Executors or administrators are not entitled to commissions when they neglect to make annual returns. *Prince's Digest*, 226. 2 *McCord's Ch. R.* 204.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] We think that the Court below erred in deciding, in this case, that the complainants were entitled to conclude the argument before the Jury. It seems that there was a general replication filed to the answer, and the complainants opened the cause by reading their bill, and the record from the Court of Ordinary, appended thereto as an exhibit, and the answer of the defendant, stating that they would use also before the Jury, the record from

the Court of Ordinary, attached to the answer as an exhibit. The defendant making no objection, the complainants closed and the defendant introduced no evidence.   It is argued that, according to the facts, the cause went to the Jury on the bill and answer, and therefore under the 15th Rule in Equity, the complainants were entitled to the conclusion.   That rule declares, that when the parties go to the Jury on the bill and answer alone, the complainant shall have the conclusion.   To settle this point, it would seem to be necessary only to determine what is going to the Jury on the bill and answer, for it is only when they do go thus to the Jury, that the complainant is entitled to conclude the argument. A hearing in the Chancery practice on the *bill and answer,* has a definite, legal meaning.   It is when the complainant files no replication to the answer.  In that case the complainant takes the risk of recovering upon his allegations and the defendant's answer; all the statements in the answer being taken as true, whether responsive to the bill or not.

If he does reply, the effect of the replication is to hold as admitted or confessed, every thing in the answer that is confessed; whilst it puts the defendant upon proving every thing not responsive to the bill and in avoidance.   In the one case, the defendant has the advantage of having every thing conceded which he has set up in his answer—in the other case, all matters set up in avoidance, or not responsive to the bill, must be proven.   Hence the 15th Rule of Practice.   It is but reasonable, that when every thing is conceded to the defendant which, when replication is filed, he must prove, he should be in the same situation as to the argument, as he would be in case he (replication being filed) had been put upon proving his answer; and also, that the complainant should be in the same situation as to the argument, as he would occupy in case of a replication and the introduction of evidence by the defendant.   In that case, complainant would have the conclusion.   Here the replication was filed, and the parties did not go to the Jury on the bill and answer, and the case does not come under the 15th Rule, and defendant having introduced no evidence, he was entitled to the conclusion.   2 *Daniel's Ch. Prac.* 966, '7, '8,  1168, 1188, 1189.   7 *Johns. Ch. R.* 217.   2 *Cow.* 18. *Cooper's Equity Plead.* 328.   1 *Story's Eq. Plead.* 674, *note. Hotchkiss,* 955.   It is farther insisted, that the exemplified record attached to the answer, was part of the pleadings, which the

Fall *vs.* Simmons and others.

complainants were entitled to read as such, and that reading it, or offering to use it before the Jury, was not putting it in evidence for themselves, and therefore, they were entitled to the conclusion. If I understand this idea, it is this : that inasmuch as the exhibit is a part of the defendant's pleadings, it stands upon the same footing as the answer itself under a replication ; that is, if it, with the answer, contains admissions for complainants, it is to that extent evidence, as the answer is for them, and no farther ; and so far as it is evidence for the defendant, it is offered as the evidence of the defendant, and being so offered, it is the same thing as if the defendant himself offered and read it ; and *thereby* the defendant is made to introduce testimony and loses the conclusion. The reasoning is not at all satisfactory, and so far as it is, it is made to rest on a false foundation. Exhibits are not a part of the pleadings, and must be proven under a replication. It is certainly possible for the exhibit, or *an exhibit*, to be so identified with the admissions in the answer as to be a part of the record ; but it is certainly true, that exhibits are not, as a general rule, a part of the pleadings. This exhibit is no part of this answer.

The complainants, with the consent of the defendant, made it evidence for themselves—they introduced it. I can see no difference between a proposition to use a paper as evidence, which is assented to, and a formal tender of that paper in evidence. The defendant in this case introduced no evidence ; and under the rule, that a replication being filed, and the defendant introducing no evidence, he is entitled to the conclusion—it ought to have been awarded to him. Whilst we find it necessary thus to correct this, in our view, error, yet we will not send the cause back, because we think, on the merits, the ruling of the Court and the verdict of the Jury were according to law.

[2.] The Court below instructed the Jury, that in computing the interest against the administrator, it would be equitable to make rests at the end of every six years from the time the notes for which the property sold fell due, and the disbursements allowed, and compound the interest on the balance in his hands. From the manner in which the opinion of the Circuit Judge is expressed on the record, his meaning is not so clear as we could wish it. We understand him to say, that allowing the administrator his disbursements at the time they were made, they (the Ju-

ry) are to calculate interest on the balance of the notes for which the property sold, from the time they fell due, for six years, and at the end of each term of six years to compound. This opinion as to the manner of computing the interest is excepted to. The question of interest against a trustee is a very unsettled one in the English and American books. From them, I may safely assert, that no rule can be drawn by which every case can be determined. Indeed, Chancellors in both countries seem to concede that the rule of computation in each case, must depend very much upon its own facts. This Court are not called upon now, to establish general rules upon this subject, or to lay down principles for the guidance of our Courts in future. This is unnecessary, because the Legislature has established a uniform rule of liability. All cases occurring since the Act of 1847, will be subject to its provisions. The Act makes all guardians, executors and administrators, already appointed and qualified, chargeable with *seven per cent. interest* upon all trust funds in their hands, for six years after the *1st of January,* 1848, without compounding, and after the expiration of that term, with *six per cent.* interest per annum, to be compounded at that rate annually; and all executors, administrators and guardians, to be appointed and qualified after the date of the Act, chargeable with *seven per cent. interest,* without compounding, for six years from the time of their qualification and appointment, and after that term with *six per cent.* interest per annum, to be compounded at that rate annually. *Acts of* 1847, *pamphlet, p.* 16. But for this Act, it would be the duty of this Court to endeavor to establish some rule or rules upon this subject, which might be of general application; and a more important duty than that would have been, has not yet devolved upon this Court. The Legislature having relieved it of that duty, it is necessary only for us to pass upon this case according to its facts.

We are asked now to say, whether the rule adopted by Judge *Hill,* in this case, be or not an equitable one. To do so, it is not necessary to review the numerous decisions upon the question of interest, as chargeable upon trustees. Certain general principles, however, may be stated, as at this day well settled. For many years, in England, trustees were not chargeable with any interest. This very unreasonable and unjust idea was exploded in the case of *Ratcliffe vs. Graves,* (1 *Vern.* 196,) in the face of forty prece-

dents. The great principle was there first settled, *that an executor cannot turn the money to his own account;* he shall make no profit on the trust fund; all the gain shall go to the *cestui que trust.* 1 *John. Ch.R.* 620, 624, 625. 2 *Fonbl. Eq. b.* 2, *ch.* 7, §6, *note. Jeremy on Eq. Jurisd. b.* 3, *pt.* 2, *ch.* 5, *p.* 543. 2 *Story's Com. on Eq.* §1277. Courts of Chancery will now see to it that trustees do their duty, and will place the *cestui que trust* in the same situation as if they had faithfully performed their duty. This is in accordance with public policy, for it secures fidelity, by removing temptation to speculate in the trust fund, and keeps alive a sense of responsibility and of personal interest. At the same time, it is obvious enough that the Courts have been careful not to push these doctrines too far, lest they should inspire dread of all trusts, and drive honest men from their acceptance. In this country, I am well satisfied, that it is unwise to hold trustees to too stringent a rule as to interest, because of the fluctuations in the value of property, the instability of securities, and the absence of such public stocks as are safe. The remarks of *Nott, J.* in *Wright vs. Wright,* upon this point, are worthy of special note. What is true in South Carolina is, for like reasons, more unquestionably true in our own State. He says, in commenting upon the English authorities, " I take it, therefore, that there is no such general rule as that an executor shall be required to pay compound interest on the balances that may be found in his hands. And if we had found such a rule more prevalent in England, where money may be always promptly vested in stock, or some other productive fund, yet it would be impracticable in this State, where people are not in the habit of dealing in stock, and indeed where it is only rarely to be purchased. Debts due estates are generally collected in slowly and in small amounts. Monies cannot always be let out promptly, much less safely, at interest, and simple interest is usually more than can be realized with the utmost diligence." 2 *Mc'Cord's Ch. R.* 203. It is, however, well settled here and in England, that if a trustee has made interest upon the trust funds, or ought to have invested them so as to yield interest, he shall be chargeable with interest. This general rule goes farther, and it may be said to be, indeed is, well settled, that in all cases where there is a fund in his hands, not needed for the purposes of the trust, it is his duty, as trustee, to invest it and to make it yield interest, whether the trust so specially direct or not.

*John. Ch. R.* 508. *Ib.* 527. *Ib.* 620. 2 *McCord's Ch. R.* 203. *Story's Com. on Eq.* 1277.

It is settled farther, I apprehend, that the interest is not as a matter of course to be compounded. Courts of Equity will direct annual, or more frequent rests to be made, and a compounding of interest for the benefit of the *cestui que trust,* at longer or shorter periods, dependant upon circumstances. Liability to pay simple interest is the rule—compounding is the exception. For example, if the trustee applies the fund to his own benefit in trade, or sells trust stocks and applies the proceeds to his own use, or refuses to follow the directions of the deed enacting the trust, as to investments, or conducts himself fraudulently in the management of the funds, and in all other instances depending upon like principles, Chancery will direct the compounding of the interest. What shall be the term of time at which it shall be compounded, must depend upon the circumstances of each case—it may be semi-annual, or annual, or at longer intervals. 11 *Vesey,* 91. 13 *Ib.* 407, 590. 5 *John. Ch. R.* 497. 12 *Vesey,* 127. 2 *Brow. Ch.* 616. 19 *Vesey,* 383. 1 *Madd.* 13. *Story's Com. Eq.* §1277. 2 *Kent,* 230, 231, *notes.* 18 *Vesey,* 246. 4 *Dow's P. C.* 209. 1 *Harr. & Gill.* 11. 3 *Ib.* 311. 1 *Pick.* 527. 18 *Pick.* 1. 2 *Dana, K. R.* 253. 2 *Dev. & Batt.* 566. *Case of Harland's Accounts,* 5 *Rawl. Reps.*

Now, I apprehend that gross delinquency in the management of the trust, upon the principles upon which all these exceptions go, will also subject an administrator to compound interest; and upon this account we sustain the rule of computation prescribed by Judge *Hill.*

The distributees in this case had a right to know, yearly, the condition of the estate; the state of its funds, principal and interest; what balances were in the administrator's hands, and when they accrued; what disbursements were made, and when they were made, &c. All these things are duties which the law devolves upon the administrator. His returns ought to have shown them, but they do not. How stand the returns? In December of the year his intestate died, (1827,) the appraisement was made—in February thereafter he returned it. In the same month he returns the sale, schedule of notes, &c. rent of lands, and the sale of one tract of land. In July, 1829, he makes a return of disbursements—more than two years after the date of the last return. In

December, 1834, more than five years afterwards, he makes another return of disbursements. The only other return, embracing large debits and credits, was not made until 1845, after suit was instituted against him—more than ten years after the preceding return. It is not pretended that Dr. Fall has acted dishonestly in the management of this estate—the facts and his character preclude any such pretence. The balance of principal remaining in his hands was small, and the verdict rendered is constituted mainly of interest; but it is certainly a case of gross neglect. The neglect consists in a clear failure to do his duty for long terms of years, in keeping the distributees informed, by returns to the Court of Ordinary, of the actual condition of the estate. Now they come into a Court of Chancery to be placed in the condition they would have been in had he done his duty faithfully. Now, is it inequitable that, under such circumstances, they should be allowed simple interest upon actual balances, after allowing all disbursements, for six years, and then to be compounded, and also to be compounded at every recurring term of six years? The legal presumption is, that the administrator would not permit debts due the estate to be barred by the Statute, (six years is the Statute of Limitations on notes, and a less term on accounts,) and that he did, in fact, collect in at the end of each six years' term, the principal and interest. We do not think that the Court erred on this point.

[3.] The decision of the Court below, that the administrator is not, in this case, entitled to any commissions, is also excepted to. The language and the policy of our Statute on this subject is perfectly plain. The Act of 1792 declares, "that every executor and administrator shall annually, whilst the estate shall remain in his or their care or custody, on the first day of January, or within ten days thereafter, render to the Register of Probates in the County in which they obtained probate of wills, or letters of administration, a just and true account, upon oath, of the receipts and expenditures of such estates the preceding year," &c. This provision of the Act of 1792, is re-enacted substantially by the Acts of 1799 and 1810. The last named Act requires all guardians, executors and administrators, annually to render "a full and correct account of the estate, and the condition of the estate in their hands," which account shall contain "a statement, on oath, of the transactions of the estate to the 1st of December preced-

ing such return, together with the necessary vouchers relating thereto." *Prince*, 226, 232, 240. The Legislature was careful to define the duty of executors, administrators and guardians, as these Acts demonstrate, with accuracy and minuteness. It is made their duty, in each and every year, to render a full and correct *account of the estate and the condition of the estate.* The Act of 1792 proceeds to declare, "if any executor or administrator shall neglect to render such *annual* accounts, he shall not be entitled to any commissions for his trouble in the management of the estate." The meaning is, if he shall neglect to render account, in the manner pointed out by law, in each and every year, he shall forfeit, not his commissions on the returns so neglected, which appertain to the neglected year, but all commissions for his trouble in the management of the estate. The requirement to make returns is mainly for the benefit of creditors, heirs, distributees and minors; and the forfeiture is in the nature of a penalty to secure the faithful performance of the duty. Such is the meaning and such the policy of the law. We are not at liberty to construe away its meaning, or defeat it by perverting its policy. We must give it its full effect. And as the administrator in this case did not make regular annual returns, we hold with the Court below, that he has forfeited all commissions for his trouble in managing the estate. It is true, that a precisely similar law in South Carolina has received a different construction. It has been there held, that an executor is entitled to commissions on the returns of those years which have been made, although he may have neglected other years. This construction has not met there with entire approbation, for Judge *Nott,* in *Wright vs. Wright,* says of it, "the correctness of that construction, however, is perhaps questionable." He farther says that it must be received with some qualification, and qualifies it thus: "If an executor shall omit to settle his accounts for several years, and then make a return for that whole period, he will only be entitled to commissions for the year in which his account is rendered, and the allowance must not be made to embrace those years in which no returns have been made; and unless his accounts are so made out, that the transactions of each year may be distinctly ascertained, no commissions ought to be allowed." 2 *McCord's Ch. R.* 200. We are not bound, however, by the decisions of the Carolina Courts, and dissent from them in this instance. It was

said in argument, that the Court of Ordinary having allowed commissions to the administrator, that allowance is a judgment of a Court of competent jurisdiction in his favor, and is conclusive. We have determined differently. See *Brown and others vs. Wright,* 5 *Geo. Rep.* 32, 33.

[4.] The last exception relates to the allegations in the bill, that the complainants had again and again applied to the defendant, and requested him to come to a settlement and account with them, &c. To these allegations the defendant, in his answer, made a special denial. The Court charged the Jury, that these allegations were merely formal, and that the denial in the answer did not make it necessary for plaintiffs to prove them. The defendant insisted that they were material, and that the denial in the answer put the complainants upon proof of these charges, and excepted. There is nothing in the exception. The question is this: Are these allegations material? If they are, being denied, they ought to have been proven. Is a demand upon an administrator necessary to entitle a distributee to recover either principal or interest? Certainly not. The right to sue grows out of the character of the defendant as administrator, and of the plaintiff as distributee of the estate which he represents. The liability to pay principal, depends upon the fact whether he has any in hand—to pay interest, upon the circumstances of his administration. A demand is not a precedent condition to the complainant's right to recover the one or the other. He is entitled to recover, if at all, wholly irrespective of any call upon the defendant. If these charges were stricken out of the bill, there is enough in it to warrant a decree.

It is usual to put in such charges. In some cases, no doubt, a demand must be specially charged and proved, if not admitted. This is not one of them. Putting in such charges does not make it necessary that plaintiff should prove them. He is bound to prove only the substance of his case—so much only of it as is necessary to entitle him to a decree. 2 *Daniel's Ch. Practice,* 996, 997. *Gresley Eq. Evid.* (*Amer. edit.*) 167 *to* 169. 1 *Russ.* 101.

Let the judgment below be affirmed.