## TIPPIN, administrator, v. PERRY, administrator.

1. The right to hold a trustee liable for interest at the rate of six per cent. per annum, annually compounded, depends only upon lapse of time and his failure to relieve himself of the general rule laid down by the statute, by annually returning the interest made by him and accounting for the balance of the fund.

2. It is not erroneous, when beginning to calculate and charge such interest against a trustee, to add the interest which has accrued during the seven per cent. simple-interest period to the original fund, thus forming a new principal upon which to calculate and charge interest at the rate of six per cent. per annum, annually compounded.

3. Where an administrator made only five returns during a period of nineteen years, and the auditor, to whom the questions involved in a case arising under a citation against the administrator for a final settlement of his accounts were referred, calculated interest against the administrator upon each separate receipt and interest in his favor upon each separate disbursement, it was not erroneous to overrule an exception of law to the auditor's report, which merely alleged that he erred in not making the calculations of interest "upon the balances as they appear in the several returns of" the administrator.

4. The time which the auditor allowed the administrator, before charging him with interest upon the funds which came into his hands, was not, as against the administrator, unreasonable.

5. Where an administrator, at the time of his discharge, was allowed by the order of the ordinary to retain, at four per cent. per annum interest, a fund in his hands belonging to the estate of his intestate, which no person claimed, and he so held such fund until his death, many years thereafter, without adding to it the interest which had accrued thereon, his own administrator was not entitled, before being charged, as administrator, with interest upon funds received by him by virtue of his office, to have the total amount of such funds reduced by subtracting therefrom both the principal of this unclaimed fund and the interest which had accrued thereon at the time when he received it.

6. In a final settlement between the estate of the last-mentioned administrator and the estate upon which he had administered, he was entitled to credit for the amount of the interest upon this fund, which had accrued when he received it, and which he had paid to those who had established their legal right to the fund and the interest thereon.

7. It is not erroneous to refuse to allow a party to file new exceptions to an auditor's report, after the time for filing exceptions thereto has expired, when no reason or excuse for not filing such exceptions within the time prescribed by law is offered.

8, 9. An exception of fact to the report of the auditor, upon the ground that he erred in not allowing a specified credit claimed by the administrator in

his returns, was properly overruled, when it clearly appeared from the report of the evidence before the auditor that the administrator was not entitled to such credit.

10. Where an exception of law to an auditor's report is improperly classified as an exception of fact, and there is a motion to dismiss or strike the exception for this reason, there is no error in sustaining such motion, when no offer is made to amend the exception by properly classifying it as an exception of law.

Argued June 11, 1904.—Decided March 4, 1905.

Exceptions to auditor's report.    Before Judge Lewis.    Morgan superior court.    September 17, 1903.

Perry as administrator of the estate of Alliston brought, in the court of ordinary of Morgan county, against Tippin as administrator upon the estate of Zachry, a citation for an accounting and settlement by Zachry's estate with Alliston's estate, upon which Zachry had been administrator, it being alleged that Zachry had died without being discharged from such administration, having in his hands property and money belonging to Alliston's estate.    There was a judgment in the court of ordinary against Tippin as administrator, and an appeal therefrom by him to the superior court.    In the superior court the case was referred to an auditor, who found against Tippin as administrator of Zachry. Tippin as administrator filed various exceptions of law and fact to the findings of the auditor.    On September 3, 1900, the case came on to be heard upon the report of the auditor and the exceptions thereto, when the exceptor offered two amendments to his exceptions of law, which the court allowed to be filed.    The judge then, on the same day, overruled all the exceptions of law, to which ruling the exceptor filed exceptions pendente lite.    On September 4, 1900, the hearing not having been completed, the exceptor offered another amendment to his exceptions of law, but no ruling whatever was made by the court as to this amendment. On September 3, 1900, Perry, as administrator, filed a demurrer to the exceptions of fact.    On September 4, 1900, the exceptor offered an additional exception of fact, which the court allowed to. be filed and to which the plaintiff also filed a demurrer.    During the hearing on September 4, 1900, after a jury had been empanneled to try the exceptions of fact, Judge Hart, who was presiding, " all parties consenting thereto, withdrew said case from the consideration of the jury, and passed an order submitting all issues

raised by the pleadings in said case to himself as judge, to pass upon the facts and law, and render such judgment as to him might seem meet, proper, and legal, with the right to either party to except thereto and take such judgment to the Supreme Court for review, just as if a jury had rendered a verdict in the case. The plaintiff then filed a special demurrer to one of the grounds of the amended exceptions of fact. Judge Hart held the case under advisement until the end of his term of service as judge, without rendering any judgment therein. Judge Foster, who succeeded Judge Hart, was disqualified to preside in the case, and nothing further was done in the matter until Judge Lewis became judge of the circuit. At the March term, 1903, the case, "under said order of Sept. 4th, 1900, . . was duly presented and argued before" Judge Lewis, who reserved his decision and judgment thereon until the succeeding term, when he sustained the demurrers filed by Perry, as administrator, to certain of the "exceptions of fact," and overruled all the other exceptions of fact, except as to the allowance of a small credit in favor of Zachry's estate, and rendered a judgment affirming the findings and report of the auditor in all other respects, and making it, as thus amended, the judgment of the court. To all of these rulings Tippin as administrator excepted. In order that the decision to be rendered may be clearly understood, it is necessary to state certain of the facts which were developed by the evidence before the auditor. In 1858, John M. S. Barber died, intestate, in Morgan county, Georgia, leaving a small estate, and in September of that year Elias Alliston was appointed administrator upon his estate and took charge of the same as such. In May, 1860, Allison applied for dismission from such administration, and, upon this application coming on to be heard by the court of ordinary, the court found that there was in the hands of Alliston the sum of $547.56 belonging to the estate of his intestate. The court granted the application for dismission, and, at the same time, passed an order that, as this fund belonging to the estate of Barber was not claimed by any person to whom the administrator would be justified in paying it, Alliston, administrator, should retain it in his hands, at an interest not exceeding four per cent. per annum, until the further order of the court, the order reciting that it was passed by virtue of the act of December 22, 1840. This fund

remained in Alliston's hands until his death, which occurred in 1866. He left a will, and Davis qualified as his executor in July, 1866. Davis died in 1869, and Marshall was appointed his administrator. On the 5th of July, 1866, Zachry was appointed administrator, with the will annexed, of Alliston. On June 30, 1870, Zachry, as such administrator, received from Marshall, as administrator of Davis, $1,595.12 as the amount due by Davis's estate to the estate of Alliston. In 1884 Ambrose J. Barber and others, as the heirs at law of John M. S. Barber, brought an equitable proceeding against Zachry as administrator of Alliston, and, at the March term, 1885, of the superior court of Morgan county, recovered a verdict and judgment therein for $547.56 principal, with interest thereon at four per cent. per annum, from May 3, 1860. The amount of the principal and interest of the verdict and decree was $1,091.46, which was paid, on March 26, 1885, by Zachry as administrator of Alliston. Zachry died in February, 1889, and Tippin was appointed as his administrator; and in January, 1900, Perry was appointed as administrator, cum testamento annexo, upon the estate of Alliston.

*Foster & Butler*, for plaintiff in error.
*George & Anderson* and *Samuel H. Sibley*, contra.

FISH, P. J. (After stating the facts.)  1. The first exception of law was, that the auditor erred in charging compound interest against the estate of Zachry, "because there is nothing in the evidence showing that Zachry . . applied the proceeds of the estate to his own use, or conducted himself fraudulently in the management of the fund, or withheld it purposely or negligently from the legatees." This exception was properly overruled. The Civil Code, § 3498, provides: "The interest to be charged against trustees shall be at the rate of seven per cent. per annum, without compounding, for six years from the date of their qualification; and after that time at the rate of six per cent. per annum, annually compounded. But any trustee may relieve himself from this rule by returning annually the interest actually made and accounting for the balance of the fund. Any distributee may recover greater interest by showing that the trustee actually received more, or that he used the funds himself to greater profit." It will be readily seen that there is nothing in this section which sustains the contention of the plaintiff in error. On the contrary,

it seems clear that the right to hold the trustee liable for interest at the rate of six per cent. per annum, annually compounded, depends only upon lapse of time and his failure to relieve himself of the general rule laid down by the statute, by annually returning the interest made by him and accounting for the balance of the fund. In the present case the administrator did not seek to relieve himself of the statutory rule in this way. Before the act of December 29, 1847 (Cobb's New Dig. 336), courts exercising equity powers charged compound interest against administrators, etc., as a penalty for misappropriation, fraudulent retention of the funds, gross negligence, etc., and the interest was compounded at regular periods fixed by the court. The rule laid down by the decisions in *Fall* v. *Simmons*, 6 *Ga.* 265, and *Kenan* v. *Hall*, 8 *Ga.* 417, wherein transactions prior to that act were involved, was to compound the interest every six years in such cases. But this was changed by the act of 1847, which was entitled : "An act more effectually to define and make uniform the liability of guardians, executors, and administrators, in regard to the interest to be charged against them." Its preamble recites that "Whereas the practice in the several courts of Georgia is different and conflicting in regard to interest chargeable against guardians, executors, and administrators, for remedy thereof," the statute is enacted. The rule laid down in the section of the Civil Code which we have quoted is taken from this act. Neither the original act nor the section of the code upon the subject makes the charging of compound interest dependent upon misappropriation of the assets of the estate, or fraud, misconduct, or negligence in its management.

2. The second exception of law was, that the auditor erred in calculating interest, at the rate of seven per cent. per annum, for six years, and then adding the interest thus obtained to the principal, and compounding interest upon this new principal, annually, thereafter at the rate of six per cent. per annum, instead of keeping the interest which had accumulated during the seven per cent. simple-interest period separate from the principal and finally adding it to the sum obtained by compounding interest annually upon the original principal from the beginning of the six per cent. compound-interest period. The question here made has never, so far as we have been able to ascertain, been decided

by this court, and its solution depends upon the construction to be given to the above-quoted section 3498 of the Civil Code. Prior to the act of 1847, from which the provisions of this section are taken, in charging interest against trustees, administrators, etc., simple interest was the rule and compound interest the exception. As to when compound interest should be charged depended much upon the circumstances of each particular case. This court announced that in cases where it was proper to charge compound interest, simple interest should be charged for six years, to be compounded at the end of that term and at the end of every subsequent term of six years. *Fall* v. *Simmons, Kenan* v. *Hall*, supra. The purpose of the act, as shown by its title heretofore indicated, was to fix a uniform rule for the computation of interest against trustees, administrators, etc., from which rule they could be relieved by annually returning the interest actually made and accounting for the balance of the fund in their hands. Under this rule, compound interest was charged as a penalty for not making the annual returns prescribed by the statute; and unless the interest computed for the first six years is added to the principal, and the sum of the principal and interest taken as a new principal, upon which the compound-interest is calculated, charging the compound interest will not amount to a penalty for at least six years after the compound interest period begins. A simple calculation will show that six per cent. per annum, annually compounded, upon a given principal, for a period of six years, will amount, in the aggregate, to less than seven per cent. simple interest for the same time. If we look merely to the wording of the statute, the construction contended for by the plaintiff in error is not only plausible but would seem legitimate and proper; but when we consider the necessary result of such a construction, we find that in many cases the purpose of the statute, in charging compound interest, would be wholly defeated, while in others it would be partially destroyed. We think that the statute, following the old practice as to periods of rest, intended that there should be a rest at the expiration of six years from the beginning of the computation of interest, when the principal and accrued interest should be added together and a new principal formed upon which to begin to calculate the compound interest.

3. The third exception of law alleged that the auditor erred in not making the calculations of interest " upon the balances as they appear in the several returns of A. C. Zachry, admr." It appears, from the recital in this exception of the method adopted by the auditor, that he took each separate receipt and disbursement and calculated the interest thereon for the full time, and then found the sum of the receipts, principal and interest, and from this subtracted the total amount of the disbursments, principal and interest. " Defendant says he should have found the interest on the balances of each return, either for or against the administrator, from its date to the date of the succeeding next return, and then from the amount thus found subtracted or added the balance of the next return, and thus found a new principal." It will be seen that the exception here is, not that the auditor erred in not making his calculations of interest upon the annual balances which he found, or ought to have found, for or against the administrator, but that the auditor erred in not making his calculations of interest " upon the balances *as they appear in the several returns* " *made by the administrator.* The administrator, Zachry, did not make annual returns, as required by law. Although he held the office of administrator for more than nineteen years, he made only five returns, and in one instance about ten years elapsed from one return to the next suceeding one. Clearly, therefore, the auditor ought not to have based his calculations of interest upon the balances as they appear in the few returns of the administrator. There was no error in overruling this exception, for the reason that to have sustained it would have been to have held that the auditor should have computed the interest upon the balances as they appear in the returns of the administrator. The distinct assignment of error is, that the auditor erred in not taking as the basis of his calculations of interest the balances as they appear in the returns of the administrator, and the idea that he erred in calculating the interest separately upon each item of receipts or disbursments is derived, not from any actual allegation that he did, but from an allegation that he should have made his calculations in a specified way, followed by a recital of the way in which he did make them. The effect of sustaining the exception as made would have been equivalent to a direction to make the calculations as the exception alleged they should have been made.

Whatever may have been the duty of the court, when entering up the final decree in the case, in reference to correcting a mistake of law made by the auditor, which was clearly apparent on the face of his report, there was no error in overruling this exception.

4. The fourth exception of law was as follows: "That said auditor erred in not allowing in his calculation a reasonable time for the administrator to acquaint himself with the estate and ascertain to whom and where the estate should be paid. And this should apply to the fund from the sale of the home place in 1883, as well as the funds received from his predecessor. The auditor in his calculation allows no time at all for this." There was no merit in this exception. In the pleadings in the case it was alleged on one side and admitted on the other that letters of administration upon the estate of Alliston were issued to Zachry on July 5, 1869. June 30, 1870, the date of his first return as administrator, was taken by the auditor as the time from which to begin to calculate interest. The Civil Code, § 3497, provides: "No interest shall be charged either way for the first year, as one year is now allowed by law for the collection of assets and to ascertain the indebtedness of an estate." It will be seen, from the dates given above, that the time allowed the administrator by the auditor was just five days less than the twelve months allowed by the statute. The exception was, not that the auditor did not allow him one year or the time allowed by the statute, but that the auditor did not allow "a reasonable time for the administrator to acquaint himself with the estate and ascertain to whom and where the estate should be paid." There is nothing in the case to show that the time allowed by the auditor before charging interest against the administrator was not, relatively to the administrator, reasonable. This is especially true in view of the fact that the estate had been partially administered before Zachry was appointed administrator thereon. With reference to the portion of this exception which applies to the fund received by the administrator from the sale of the "home place" in 1883, we have ascertained from the return of the administrator filed on July 7, 1884, that the administrator charges himself with the amount received from the sale of this place, under date of September 4, 1883. It appears from the report of the auditor that he charged the administrator with interest on this fund from

July 7, 1884, taking the date when the administrator made his return, and not the date when he received the money, as the starting point from which to charge him with interest. This allowed the administrator a little over ten months after the funds came into his hands before charging him with interest thereon. The Civil Code, § 3496, which is applicable to funds coming into the hands of an administrator after the first year, provides that, in making settlements with administrators, "a reasonable time, according to the facts of each case, should be allowed to the trustee to invest funds coming into his hands, before charging him with interest thereon; and, in like manner, disbursements made by the trustee should, as a general rule, bear interest from some period anterior to the date of payment, according as he may have retained funds to meet them." Certainly it would seem that the administrator in this case would have no right to complain that ten months was not a reasonable time to allow for the purpose indicated.

5: Several of the exceptions of law deal with what is called in this case the "Barber fund," and raise, in different forms, the question as to what constituted such fund. The importance of this question lies in the fact that if there was in the hands of Alliston, at the time of his death, a fund separate and distinct from the assets of his own estate, belonging to the estate of Barber, which fund passed into the possession of Zachry when he received the Alliston assets, Zachry, as Alliston's administrator, was not liable, upon this fund, to Alliston's estate for the interest, simple and compound, chargeable, under the statute, against an administrator upon the assets of the estate in his hands. It is unnecessary for us to determine whether there really was such a thing as the "Barber fund" in the hands of Alliston, after he was allowed by the order of the ordinary to retain, until the further order of the court, the amount which he held as the administrator of Barber, at four per cent per annum interest. There appears to be much force in the contention urged by the counsel who argued the case here for the defendant in error, that when Alliston was dismissed from the administration of Barber's estate and allowed to retain the amount of money in his possession belonging to such estate, at a fixed rate of interest, he became simply a debtor to Barber's estate for this amount and the interest which should

accumulate thereon; that the effect of the order of the ordinary was to allow Alliston to borrow this sum from the Barber estate, at a given rate of interest, and it became then merely, as against him or his estate, a trust debt which he owed to whomsoever should be legally entitled thereto.    But this is not an open question in the present case, so far as the original "Barber fund" is concerned.    Tippin, the administrator of Zachry, in his pleas, treated the $547.56, belonging to the Barber estate, which Alliston was allowed by the order of the ordinary to retain in his hands at four per cent. per annum interest, as no part of Alliston's own estate, and, in effect, pleaded that this amount should be deducted from the sum which Zachry, by virtue of his office as administrator of Alliston, received from Marshall, before charging him with interest upon Alliston's assets.    The auditor took the same view, and, in effect, held that this fund of $547.56 never became a part of Alliston's estate, and so did not charge Zachry with interest thereon.    He specifically found, that, "From the amount received by the administrator, Zachry, in 1870, to wit $1,595.12, should be deducted the amount due the Barber heirs, to wit $547.56, making the amount to which he should be chargeable that year as receipts $1,047.56."    There was no exception to this ruling of the auditor by Perry, administrator de bonis, etc., of Alliston; and hence, whether the auditor was right or wrong in so holding, it is settled, in this case, that there was in the hands of Alliston a "Barber fund," amounting to $547.56, which never became a part of his estate, but remained, during his life and after his death, and until it was paid by his administrator, Zachry, to the Barber heirs, a separate and distinct fund, held in trust for the estate of Barber.    The defendant below contended that the "Barber fund," at the time when Zachry received it, consisted of the original amount of $547.56 and four per cent. per annum interest thereon from the time when such interest began to run against Alliston to the time when Zachry, as administrator, received the funds of Alliston's estate; and upon this contention some of his exceptions of law are based.    We are clearly of opinion that the interest on this fund, which accrued while Alliston or his estate held it, was simply a debt due the Barber heirs, and became no part of the "Barber fund" until it was paid to such heirs.    Alliston was simply allowed, by the order of the ordinary, to retain the

"Barber fund" in his hands, at four per cent. per annum interest, and so long as he retained it as it originally came into his hands, without adding to it the interest which he owed for its use, and in some way setting apart the principal and interest as a separate fund, the only "Barber fund" which he held was the fund which he had received as administrator upon Barber's estate and was allowed by the order of the ordinary to retain when he was dismissed from such administration. Granting what appears to have been ruled by the auditor, and seems to have been conceded by the parties, that this fund was, by the order of the ordinary, set apart as a separate fund in the hands of Alliston, still this fund did not, from day to day, attract to itself a part of his assets as interest, and thus, by small daily accretions, slowly and surely grow larger and larger. In order for it to be increased, Alliston had to pay the interest which he was due on it. If in Alliston's hands the "Barber fund" continued to grow larger and larger, as a fund separate from the assets of his own estate, then it would seem that he ought to have been constantly holding the fund at compound interest. He was to retain the "Barber fund" at four per cent. per annum interest, and if the fund which he was so to retain was continually increasing, then the sum on which he was obligated to pay four per cent. per annum interest was constantly growing larger. But it is obvious that the law never intended that a discharged administrator, holding a fund of this sort, should pay compound interest thereon. The "Barber fund," as a fund separate and distinct from Alliston's estate, was no larger when it was received by Zachry, as his administrator, than it was when Alliston took it under the order of the ordinary.

6. The auditor found that the disbursements of the administrator, Zachry, for the year 1885 were $1,583.46, included in which was the sum of $1,091.46 paid by the administrator in settlement of the decree in favor of the Barber heirs; and that this latter sum should be deducted from the former, leaving the total credit allowed the administrator for that year $491.70. This was equivalent to holding that the administrator was not entitled to any credit whatever for the payment of the Barber claim, principal or interest. One of the amended exceptions of law, which the court allowed filed and then overruled, presents the question whether the auditor erred in failing to allow Zachry,

as administrator, credit for the amount of the interest which he paid to the Barber heirs.    At the very outset, the auditor treated the principal of the Barber claim as a fund separate and distinct from the assets of Alliston's estate, and deducted it from the amount of assets that went into the hands of Zachry, before beginning the account between him and the estate of Alliston. As Zachry was not charged with this fund when he received it, he was, very properly, not credited with it when he paid it out. But the auditor was wrong when he failed to give the administrator any credit for the interest on this fund which he paid when he settled the decree against himself, as administrator, in favor of the Barber heirs.   He did not err in failing to give Zachry credit for the whole amount of the interest which he paid to the Barber heirs.   Whether, as an abstract proposition, Zachry was chargeable with the interest which accrued on the "Barber fund" after he received it, need not be determined, as his administrator, Tippin, in his pleas, admitted that Zachry was chargeable with such interest.    This admission was of itself sufficient to authorize the auditor to treat so much of the interest upon this fund as properly chargeable to Zachry, and not to the estate of Alliston.    But the auditor clearly erred in failing to give Zachry credit for the amount of the interest on the "Barber fund" which had accrued before he received it.    This interest was certainly not due by Zachry, but by Alliston's estate, and when Zachry, as Alliston's administrator, paid it to the Barber heirs, he was entitled to credit for it in the account between him and the Alliston estate.   He paid a debt of the estate, and was entitled to credit for it.    To this extent the exception here referred to should have been sustained.

7. Among the assets which Zachry received, as administrator upon the estate of Alliston, was a note upon N. G. Foster, upon which there was a balance due, which was included in the inventory and appraisement of the estate.    The auditor charged him with the balance due upon this note and with compound interest thereon, at the rate of six per cent. per annum.    In the original exceptions this particular ruling of the auditor was not attacked; but on September 4, 1900, the defendant, without leave of the court, filed an amendment to his exceptions of law, in which it was alleged that the auditor erred in charging the

administrator with compound interest upon this note; and also filed an amendment to his exceptions of fact, alleging that the auditor erred in charging compound interest upon this note, and that the administrator "should be charged with simple interest solely, and not compound interest at all." The proposed amendment to the exceptions of law was disallowed by Judge Lewis, on September 17, 1903, upon the ground that its subject-matter was included in the original exceptions of law which were overruled by Judge Hart on September 3, 1900, and upon the further ground that it was filed too late. On the same day Judge Lewis disallowed the amendment to the exceptions of fact, upon the ground that it was offered too late, and for the further reason that it was not an exception of fact, but of law, and had been previously overruled. Irrespective of the question whether Judge Lewis was right in holding that the subject-matter of these amendments was included in the original exceptions of law which had been overruled by Judge Hart, it is very clear that he did not err in refusing to allow these amendments, upon the ground that they were offered too late. The time for filing exceptions to the auditor's report had expired. The Civil Code, § 4589, requires that exceptions to an auditor's report must be filed within twenty days after the report is filed and written notice thereof given by the auditor to the party desiring to except or his counsel. It was held in *Littleton* v. *Patton*, 112 *Ga.* 438, that the law contained in this section is mandatory, and makes no exception even in favor of a person who is prevented by providential cause from filing his exceptions within the time prescribed. The report of the auditor was filed August 9, 1900, and the original exceptions, both of law and of fact, were filed August 28, 1900. The original exceptions of law were overruled September 3, 1900. It was held in *Mohr-Weil Lumber Co.* v. *Russell*, 109 *Ga.* 579, that "It is within the discretion of the court to allow or reject new exceptions to an auditor's report after the time for excepting thereto has expired; but the privilege of filing new exceptions should be denied unless good cause for not duly filing them is shown." As it does not appear that any reason or excuse for not filing these exceptions within the time prescribed by law was offered, it would seem to have been the duty of the court, under this decision, to disallow them. It is very

clear that there was no abuse of discretion in disallowing them. *Fleetwood* v. *Bibb*, 113 *Ga.* 618 ; *Mohr-Weil Lumber Co.* v. *Russell*, 115 *Ga.* 40.

8. In one of the returns of Zachry, as administrator, he credited himself, under date of April 21, 1873, with $137.83, paid to Mrs. M. A. Alliston on her legacy. The auditor rejected this credit, and there was an exception of fact to this ruling. On the trial before the auditor, an "analysis of vouchers," agreed upon by counsel as being correct, was introduced in evidence. The auditor found as follows: "'The analysis of vouchers shows that on the 21st day of April, 1873, this administrator paid to Mrs. M. A. Alliston $137.83, the identical amount charged to him by the ordinary for year 1871, and while on this matter I had as well dispose of it. I do not think that the administrator, Zachry, should be allowed credit for this disbursement in the year 1873. I am forced to the conclusion that the amount paid Mrs. Alliston, $137.83, she being a legatee, was in settlement of a note she owed the estate; when Zachry took possession of Alliston's estate this note was on the appraisement list and was in date, being for $95.50 and dated Dec. 6, 1866. A calculation on this note from that time to the 21st of April, 1873, at 7% will make the amount of the payment." The error alleged in the exception was, that there was no proof to sustain such finding, and that the auditor had no authority to use the finding of the ordinary, which was appealed from, as proof. There was no need to resort to the statement of the account in the findings of the ordinary for proof to sustain the conclusion reached by the auditor. Attached to the amended plea of Tippin, administrator of Zachry, and made a part of the same, is (using the language of such plea) "a carefully prepared statement and calculation, based upon the records in said court of ordinary, showing a just and legal adjustment and settlement of accounts between his intestate and the estate of Elias Alliston." In this "carefully prepared statement and calculation," the respondent, under date of April 21, 1873, charges his intestate, Zachry, as administrator of Alliston, "To principal and interest at this date on M. A. Alliston's note, $137.83." In the return of Zachry, as administrator, filed July 24, 1883, he credits himself as follows: "To amt. paid Mrs. M. A. Alliston (legacy) No. 7, $137.83;" the exact amount which the statement

attached to the amended plea shows was due by Mrs. M. A. Alliston to the estate of Elias Alliston on April 21, 1873. Turning to the "analysis of vouchers," we find that voucher No. 7, taken from voucher book No. 5, is dated April 21, 1873, and is for $137.83, paid to Mrs. M. A. Alliston. So it is clear, from the admission in the amended plea and the evidence, that the amount due by Mrs. M. A. Alliston to the Alliston estate, on April 21, 1873 — with which it was admitted by the amended plea Zachry was chargeable — was exactly offset by the amount which he, *on that same date,* paid her on her legacy. The auditor did not charge the administrator with this note, nor did he credit him with the amount paid on Mrs. M. A. Alliston's legacy. If he had done the one, he should have done the other. As he did neither, the result was just the same, and there was no just cause for exception to his finding.

9. In one of the exceptions of fact it was alleged that the auditor erred in rejecting from the returns of the administrator, Zachry, a credit of $97.78, for amount paid to W. H. Hester. The court very properly overruled this ground of the exception. From the returns of Zachry, as administrator, it appears that this amount was paid to Hester, as guardian for C. W. Alliston Jr.; and from the voucher for this payment it appears that the amount paid was dividends upon railroad stock. The only railroad stock which appears in the appraisement of the estate of Elias Alliston is four shares of Georgia Railroad stock. He bequeathed four shares of stock in this railroad to his grandson, C. W. Alliston Jr. Zachry, as administrator de bonis, etc., neither charged himself with any railroad stock, nor with any dividends upon such stock; nor did the auditor charge him with any. Zachry turned over the stock and paid the accrued dividends to the guardian of this legatee. It is manifest, therefore, that he was not entitled to any credit for the payment of these dividends.

10. One exception, which was included in the original exceptions of fact, was, that the auditor erred in charging Zachry with compound interest upon the Foster note from the date that it came into his hands, and not six years afterwards. This exception was demurred to upon the ground that it was not an exception of fact, but an exception of law. This was equivalent to a motion to dismiss or strike the exception for the reason stated.

The court sustained the demurrer and passed an order striking the exception.    The exception was clearly one of law.    The law requires exceptions to an auditor's report to be separately classified as "exceptions of law" and "exceptions of fact." Civil Code, § 4589.    The reason for this requirement is apparent, as exceptions of law are for the exclusive consideration of the judge, while exceptions of fact, in common-law cases, are always to be passed upon by the jury, and in equity cases are to be submitted to the jury, if approved by the judge.    §§ 4595, 4596.    To mix exceptions which, under the law, are to be considered by the judge alone with exceptions which are intended to be submitted to the jury, and which, if approved by the judge, must be so submitted, is not only bad practice but is contrary to the statute.    While the improper classification of the exception did not render it void, the defect being clearly amendable, still as the attention of the exceptor was called to this defect, by a motion to dismiss or strike the exception, upon this ground, and he failed to then comply with the statute by so amending his exception as to properly classify it, there was no error in striking the exception.

There are a few minor exceptions of fact which were overruled, and which have not been insisted upon in the argument of counsel for the plaintiff in error.    It is therefore unnecessary to consider them.    *Judgment reversed.    All the Justices concur.*