## 53798. FORD MOTOR CREDIT COMPANY v. SPICER.

McMURRAY, Judge.

Edward A. Spicer sued Ford Motor Credit Company and Leader Lincoln-Mercury, Inc. for the conversion of a certain Lincoln automobile of the value of $8,695.50 claiming title or a valuable interest therein and the right

of possession. In Count 1 plaintiff seeks the value of the hire of the automobile at the rate of $20 per day from October 29, 1969, up to July 2, 1970, in the amount of $4,920, and further hire at that rate per day until trial and final judgment. In Count 2 he alleges conversion of his property in the amount of the value of the automobile, the sum of $475 personal property located in said automobile (money: nickels, dimes and quarters) and aggravating circumstances in said conversion, and alleges defendants are guilty of aggravating circumstances in said conversion to which he is entitled to additional punitive damages to deter the wrongdoers from repeating the trespass in the amount of $100,000, as well as the hire shown above. He also seeks attorney fees in the amount of $5,000 contending the defendants have acted in bad faith, have been unduly litigious and have caused the plaintiff unnecessary trouble and expense. In Count 3 he alleges other facts and circumstances surrounding the transaction in regards to the sale and purchase, communications between the plaintiff and defendants as to the deferred payments, payments made; and with reference to the seizure of the automobile, the illegal taking of the automobile by the defendants on October 29, 1969, the demand for the automobile from the defendants and their refusal to return the automobile, and the wrongful acts in taking the automobile compounded by wrongful and untruthful false information made to the Credit Bureau of Atlanta with reference to his credit. He sought the value of the automobile, hire as shown above, $150,000 punitive damages to deter the defendants as wrongdoers from repeating the trespass and $5,000 attorney fees for bad faith and for being unduly litigious.

During the trial Leader Lincoln-Mercury, Inc. was dismissed on motion for directed verdict and is no longer a party to this litigation. Separate motions for directed verdict were made by the other defendant at the conclusion of plaintiff's case (1) as to actual damages and hire; (2) the right to recover punitive damages; and (3) the right to recover attorney fees. These motions were denied. Plaintiff made a motion for directed verdict in his favor on the issue of liability, which was granted. Plaintiff

amended each count of his complaint during trial to conform to the evidence and also sought as a part of his damages expenses for attorney fees in the amount of $16,240. A verdict was returned by the jury in favor of the plaintiff in the amount of $8,758.77 actual damages, $38,500 punitive damages; and $16,240 in attorney fees.

Defendant Ford Motor Credit Company thereafter moved for judgment notwithstanding the verdict or in the alternative for a new trial, which motion, as later amended, was denied. Defendant appeals. *Held:*

1. The uncontroverted evidence shows that the plaintiff received no notice of Ford Motor Credit's decision to declare the balance of the loan immediately due and to repossess the automobile. Substantially similar language as that in the contract at bar has been construed to require that the creditor take affirmative action to notify the debtor of its election to declare the contract in default and to accelerate it to maturity. The peremptory taking of the automobile without any such notice constituted a tort which entitles plaintiff to sue. Some affirmative action must be taken by the creditor evidencing his intention to take advantage of the acceleration clause. *Lee v. O'Quinn,* 184 Ga. 44, 45 (2) (190 SE 564). The UCC (Code Ann. § 109A-9—503; Ga. L. 1962, pp. 156, 422) does authorize a secured party upon default to take possession of the collateral "unless otherwise agreed." Here the parties entered into a lengthy agreement whereby seller (in the event of default) had the right to declare all amounts "due or to become due" to be immediately due and payable and then seller would have all the rights of a secured party under the UCC. See in this connection *Ford Motor Credit Co. v. Hunt,* 144 Ga. App. 281. See also in this connection *Chrysler Credit Corp. v. Barnes,* 126 Ga. App. 444, 451 (191 SE2d 121). Compare *Fulton Nat. Bank v. Horn,* 239 Ga. 648. The trial court did not err in directing the verdict on the liability issue in favor of the plaintiff.

2. Defendant's position in the matter, as disclosed by the evidence, is that plaintiff purchased the automobile from defendant Leader (no longer a party) on August 6, 1969, paying for same with a Georgia retail installment contract which was assigned to Ford Motor Credit, account number CFA 408CX92 (not shown on contract

but later assigned on or about October 25, 1969). The unpaid balance was $6,256 plus finance charge of $1,098.42 and other itemized charges of $794.80, that is, $8,149.22, to be paid by a balloon interest free payment of $2,172.50 due in 29 days (shown to be due 9-4-69), with deferred payments for 36 monthly installment payments of $166.02, commencing one month after date (shown to be due 9-20-69).

Defendant contends that plaintiff had another account with it on an Econoline van (No. CFA 133BK48); that its collection and bookkeeping was handled by the First National Bank of Atlanta; that when plaintiff deposited a check for $2,167 (this amount rather than $2,172.50 is admitted to be the correct amount of the balloon payment due to a $5 overcharge) on or about September 25, 1969, an employee of the bank wrote on this check CFA 133BK48 (although the check does show the manufacturer's serial number of the Lincoln automobile). This was the Econoline van account, and this money was credited to that account (September 30, 1969, when cashed) instead of on the new account number CFA408CX92 (Note: Plaintiff did not have the account number on that date.) Defendant contends the evidence establishes the Econoline van number had to be furnished by plaintiff mailed to the post office box, contending this was done as per plaintiff's instructions (which plaintiff denies), and that it had a right, having made several demands upon plaintiff, to apply it to the claims it directs. Defendant cites Code § 20-1006; *Hatcher & Baldwin v. Comer & Co.,* 75 Ga. 728, 732; *Johnson v. Johnson,* 30 Ga. 857; and *Milford v. Shackelford,* 17 Ga. App. 436 (87 SE 603); that since it was not applied as plaintiff contends but as it had a right to direct, plaintiff was in default on the Lincoln contract, and it had a right to repossess the automobile on October 29, 1969. As to liability, this question is settled by Division 1 above. But as to bad faith in the transaction, this was for jury determination as to these questions of fact as to what actually occurred.

Defendant also contends the September 20, 1969, and October 20, 1969, payments of $166.02, that is, $332.04 paid by check dated 10/27/69, by plaintiff was not payment since he later stopped payment. It cites Code §

20-1004; Code Ann. § 109A-2—511 (Ga. L. 1962, pp. 156, 209) and *Pichulik v. Simpson,* 123 Ga. App. 604, 606 (181 SE2d 925), contending plaintiff was in default as to these payments on the date of repossession. But the stop payment order on this payment check was placed *after* the automobile had been repossessed on October 29, 1969. Thus, there was an issue of fact for jury determination as to whether or not plaintiff was in default on October 29, 1969, when defendant repossessed the automobile, and as to defendant's good or bad faith in the repossession. The jury elected to believe plaintiff was not in default, that there was a conversion of the automobile of the value of $8,788.77; that the conversion was attended with aggravating circumstances in the act (wilful, and wanton conduct) so as to justify punitive or exemplary damages including bad faith, unnecessary expense and trouble to plaintiff so as to also award attorney fees. Ford Motor Credit's right hand does not seem to have known what its left was doing at the time — advising plaintiff of a billing error and how to make payment on October 25, 1969, yet proceeding to repossess the automobile four days later by purchasing a duplicate key and surreptitiously taking possession of it. Defendant thereafter refused to acknowledge its mistake but proceeded to notify plaintiff of its intention to sell and seek a deficiency judgment (11-7-69). The evidence authorized the verdict, and it has not been shown to be based upon any bias or prejudice toward defendant.

3. "To authorize the imposition of punitive damages, there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. *Southern Ry. Co. v. O'Bryan,* 119 Ga. 148 (45 SE 1000)." *Central of Ga. R. Co. v. Sowell,* 3 Ga. App. 142 (59 SE 323). See also *Ford Motor Credit Co. v. Hitchcock,* 116 Ga. App. 563, 565 (4) (158 SE2d 468).

The deposition of Gravitt, a credit coordinator with Ford Motor Credit Company, who was formerly a collection coordinator, was read into the record. He testified as to plaintiff's account which had been assigned to him for handling, that the day after the repossession

the records of Ford Motor Credit Company showed that all sums due from plaintiff had been paid, but that he made no offer to return plaintiff's automobile or inform him of the error made in repossessing plaintiff's automobile. From the fact that Ford Motor Credit Company continued to withhold plaintiff's automobile after learning of its error in crediting payment of $2,167 to the wrong account and receiving the two monthly payments totaling $332.04, the jury was authorized to infer that the repossession was malicious from the time it was carried out on October 29, 1969. Compare *Johnson v. Monumental Properties, Inc.,* 141 Ga. App. 151 (1) (232 SE2d 644).

4. "Attorney's fees as expenses of litigation are not punitive or vindictive damages, but stand alone, are regulated by Code § 20-1404, and the jury may allow them if the defendant has acted in bad faith in the transaction out of which the cause of action arose. *Mosely v. Sanders,* 76 Ga. 293; *Traders Insurance Co. v. Mann,* 118 Ga. 381 (45 SE 426); *O'Neal v. Spivey,* 167 Ga. 176 (145 SE 71); *Grant v. Hart,* 197 Ga. 662, 671 (30 SE2d 271), and the cases there cited." *Williams v. Harris,* 207 Ga. 576, 579 (3) (63 SE2d 386). See also *Bowman v. Poole,* 212 Ga. 261, 262 (3) (91 SE2d 770); *Standard Oil Co. v. Mt. Bethel United Methodist Church,* 230 Ga. 341, 343 (3) (196 SE2d 869).

Although Ford Motor Credit Company contends that the evidence in the case sub judice does not show the existence of any bad faith on their part, there was evidence from which the jury could have concluded that plaintiff was not in default at the time of the repossession of his car. Consequently, the jury was authorized to conclude that the refusal of Ford Motor Credit Company to return plaintiff's automobile, except under terms which would have been authorized only if there had in fact been a default by plaintiff, was an act declaring bad faith and wanton disregard for the property rights of the plaintiff.

Ford Motor Credit Company also contends that the award of attorney fees was improper and should be stricken on the ground that the jury did not award the plaintiff an amount which closely approximated the amount claimed by plaintiff in his complaint. As

previously noted herein plaintiff amended each count of his complaint during trial to conform to the evidence and also sought as a part of his damages expenses for attorney fees in the amount of $16,240. This contention urged by Ford Motor Credit Company would be applicable if this action were based on contract, but this action sounds in tort, and therefore the cases relied upon by Ford Motor Credit Company are inapposite. *Buffalo Cab Co. v. Williams,* 126 Ga. App. 522, 525 (191 SE2d 317). The evidence here supports the amount of attorney fees awarded.

5. All of the enumerations of error raised by defendant are considered and ruled upon in the preceding divisions, and none has been found to be meritorious.

*Judgment affirmed. Bell, C. J., and Smith, J., concur.*

ARGUED APRIL 5, 1977 — DECIDED NOVEMBER 29, 1977 — REHEARING DENIED DECEMBER 19, 1977 — 

*Levine, D'Alessio & Cohn, Sam F. Lowe, Jr., Morton P. Levine,* for appellant.

*Reeves & Collier, Rex T. Reeves, Merrell Collier,* for appellee.

