## 63191. KEASLER v. CEDAR BLUFF BANK.

BIRDSONG, Judge.

Appellant Keasler was sued in April 1979 by Cedar Bluff Bank (Cedar Bluff, Alabama) for default on two notes, which were secured by collateral in the inventory of appellant's business. In May, appellant answered and denied the default and indebtedness on the basis that he was disabled and his debt liability was covered by disability insurance, and that the bank had failed to apply for disability insurance to cover the payments of the notes "even though plaintiff [bank] has knowledge that [Mr. Keasler] was and is disabled." The appellant counterclaimed for wilful and malicious refusal to obtain disability insurance proceeds, wrongful process, wrongful seizure of his property as collateral, mental anguish and physical injury (including a heart attack) and harm to reputation. Ultimately the bank dismissed its complaint against the appellant and obtained summary judgment on appellant's counterclaim. Mr. Keasler appeals. *Held:*

Under the terms of the two notes in this case, Mr. Keasler obtained and obligated himself for disability insurance coverage of his liability. He failed to make the January and February 1979 note payments. He has alleged and sworn from the beginning of this case that on February 22, 1979, he called the bank and told Mr. Mobley (who said he was the president) that he was on his way to enter the V. A. Hospital in Birmingham, Alabama, that he was disabled and wanted to "tap" the disability insurance for payment of the notes, and that he would contact the bank to discuss these matters further on February 26; that on February 26, as he had promised, he went to the bank to discover that bank employees had already been to his place of business, seized the entire contents of the building (and apparently the building itself and allegedly certain personal property of Mr. Keasler not covered in the security agreement), and padlocked the building door and posted several signs to the effect of "Keep-Out; Padlocked by Cedar Bluff Bank." Mr. Keasler has maintained that on this day, February 26, both at the bank and at his place of business, he again told bank officials that he was disabled and that he wanted to call on his disability insurance to pay off the notes. The bank contended below that it did not know Mr. Keasler was disabled until after it filed suit on the notes in April 1979. The bank did not dispose of the property seized from Mr. Keasler, and has not disposed of it to this day but remains in full possession and control of the collateral seized as well as certain personal property of Mr. Keasler which the bank admits might well be mixed in with the collateral. It is not disputed that the bank seized this property on February 22, the same

day Mr. Keasler says he first told the bank he was disabled. The bank does not deny that it was visited by Mr. Keasler on February 26. It is not disputed that Mr. Keasler was, and is, disabled. There is no dispute that the bank did apply for disability insurance under Mr. Keasler's policy and collected principal and interest on the notes, but it is not known when the bank applied for and received the insurance, and the trial court refused, notwithstanding appellant's motion to compel, to make the bank produce this information. Nevertheless, the bank retains possession of the seized property and continued to maintain its suit against Mr. Keasler until July 1981, denying that the indebtedness had been paid because it had not received its attorney fees and storage costs it was entitled to for being forced to collect the indebtedness. As to this, Mr. Keasler contended that his disability insurance was good to cover (and in fact did cover) the entire indebtedness, principal and interest, and that the bank had no reasonable reason to feel insecure on account of his disability, and that if the bank had in good faith applied for the insurance when he first told the bank he was disabled and asked to have the insurance take over, as he had a right to do, there would have been no default, no collection costs, no attorney fees, and no necessity for seizure of any collateral. In fact, just prior to being granted summary judgment on Mr. Keasler's counterclaim, the bank dismissed its entire suit, including any demand for attorney fees and storage costs that it might have made. Moreover, the record does not indicate whether the bank demanded attorney fees and storage costs in its lawsuit in the first place, as the final page of its complaint is missing from the record on appeal.

On appeal, the appellant Keasler merely argues that there are questions of fact remaining on its counterclaim and the bank was not entitled to summary judgment. The appellee bank suggests to this court as follows: (1) Since the appellant has not pleaded and proved the laws of the state of Alabama, any substantive right to recover in this case is based upon the common law and statutes of England that were in force May 14, 1776; and the appellant's failure to support his enumerations of error with the common law and statutes of England of May 14, 1776, results in unsupported and abandoned claims of error under Rule 18 (c) of this court. (The record shows appellant did plead and cite specific Alabama law to the trial court in opposition to the bank's motion for summary judgment.) (2) That appellant in his affidavit admitted that he could not set forth any facts preventing the bank's motion for summary judgment being granted because of the incompleteness of discovery in the case. (The record shows the appellant actually filed an affidavit in opposition to summary judgment, swearing to certain material and disputed facts. The

earlier affidavit referred to by the bank in its brief apparently was filed for fear that summary judgment would be granted to the bank just after the bank had refused to provide several vital answers to Mr. Keasler's requests and interrogatories, one of which was an attempt to see the insurance application filed by the bank and to find out when the bank applied for and received the insurance proceeds. This request, which after all involved the appellant's own debt insurance, was unoppressive enough even if it had been irrelevant, but was in fact perhaps the most vital information in the case, and yet was refused by the trial court after appellant filed a motion to compel.) (3) That neither of appellant's affidavits set forth any facts relating to any injuries received by the appellant, and therefore appellant had failed "in his burden to present evidence justifying his claims in his counterclaims and summary judgment was properly entered against him." Citing *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601 (203 SE2d 173), the appellee contends the appellant merely rested on the allegations or denials of his pleadings and presented no specific facts showing a genuine issue for trial.

The grant of summary judgment is reversed. At the outset of the case and throughout, the appellant contended he had informed the bank he was disabled and asked for his disability coverage to take over. If this is true, it affects the question of default and the bank's good faith in considering the notes in default, in seizing the collateral, in suing the appellant on the notes, and in continuing to maintain the suit and retaining possession of the appellant's property. If the bank knew he was disabled and in good faith had made available to Mr. Keasler his disability insurance, there might have been no costs of collection, attorney fees and storage costs. And regardless whether the suit and seizure were reasonable at the time under the facts, and regardless of when the bank discovered that Mr. Keasler was disabled, there is no dispute that even after the principal and interest was paid by insurance, the bank continued to maintain a suit against him for some time and ultimately even dismissed any request for attorney fees and storage costs. *The bank continues to hold his property, including perhaps personal property never included in the security agreement as collateral, although it no longer even contends it is owed any attorney fees and storage costs.* All of these facts may be considered by the jury. See *Ford Motor Credit Co. v. Spicer,* 144 Ga. App. 383, 387 (241 SE2d 273). Moreover, the question of whether the bank committed a breach of the peace under Code of Alabama § 7-9-503 is unresolved, even if the act of seizure was authorized at the time of seizure. See *Whisenhunt v. Allen Parker Co.,* 119 Ga. App. 813, 819 (168 SE2d 827).

On motion for summary judgment, the burden of proof is

squarely on the moving party, in this case the bank, and the benefit of every reasonable doubt as to existence of issues of fact is given to the party opposing the motion. *Summer-Minter,* supra; *Johnson v. Curenton,* 127 Ga. App. 687 (195 SE2d 279); *Georgia Practice and Procedure,* § 9-10 (4th ed.) While a party may not merely rest on the allegations and denials of his pleadings (Code Ann. § 81A-156 (e)), the statement or assertion in pleadings of a fact which in itself creates a material issue of fact certainly constitutes "set[ting] forth specific facts showing that there is a genuine issue for trial." (Code Ann. § 81A-156 (e)). Where a party states a cause of action for tort and alleges injury, the law presumes damages (Code Ann. § 105-2006). The grant of summary judgment to the bank was error.

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

DECIDED APRIL 7, 1982.

*Patton, Finnell & Price, Charles G. Price,* for appellant.
*Larry J. Barkley,* for appellee.